Charles W. Wing, Appellant, v. Ansonia Clock Company, Impleaded, etc., Respondent.

Plaintiff and defendant H., being the owners of certain patents for improvements in musical instruments, entered into a contract with defendant, the A. C. Co., by which they granted to it the exclusive right to manufacture and sell musical instruments containing said improvements, in consideration of which said company contracted to pay certain specified royalties on the instruments. The contract provided that on failure of the company to pay the royalties the patentees may terminate the license ; but in case of such termination the right to recover royalties then due was expressly saved. The contract then contained a provision by which the company agreed in substance to pay annually at least a sum specified by way of royalty, " or else forfeit the right to manufacture * * * under the foregoing license," if the patentees " shall so elect." *Held*, that the undertaking of the company was not an absolute one to pay any sum over the royalties required to be paid, but that it had the election, in case the royalties upon instruments manufactured did not amount to the sum specified, to pay the excess up to that sum, or to refuse to pay subject to the hazard of a forfeiture of its license at the election of the patentees ; and that, therefore, an action to recover such excess was not maintainable.

(Argued April 30, 1886; decided June 1, 1886.)

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made at the December term, 1884, which affirmed a judgment in favor of defendant, entered upon an order sustaining a demurrer to plaintiff's complaint.

This action was brought upon a contract between plaintiff and defendant Hill, who were patentees of certain improve-

ments in musical instruments, of the first part, and defendant, the Ansonia Clock Company, of the second part.

The material portions of the contract and the question presented thereon are stated in the opinion.

*Edward M. Shepard* for appellant. When the condition of an obligation is in the disjunctive it may be discharged by the performance of either of the enumerated acts at the election of the obligor. (*Hurd* v. *Kelly*, 78 N. Y. 588; *Manvell* v. *Holdridge*, 45 id. 151.) It is entirely competent for the parties to give the election to the obligee; and when the language of the instrument gives to the latter the right to demand payment, or enforce performance in either of two ways, there is no arbitrary rule which prevents effect being given to it. (*Hurd* v. *Kelly*, 78 N. Y. 595; *Chippendale* v. *Thurston*, 4 C. & P. 98; *U. S.* v. *Thompson*, 1 Gallison, 388; 1 Domat [Cushing's Am. ed.], § 174; Pothier, Traite des Obligationis, 246, 247; Evans' Translations, 1806, pp. 136, 137.) When a contract is in the alternative * * * the right to select mode of performance is impliedly vested in the promisor, the rule being that in case an election be given of two several things, always he that is the first agent and which ought to do the first act shall have the election. (Co. Litt. 145*a;* Chitty on Cont. 106; Bacon's Abr., "Election" [B.]; Roll. Abr. 725; *Studholm* v. *Mandell*, 1 Lord Raymond, 279; *DaCosta* v. *Davis*, 1 B. & P. 242; *Stanley* v. *Fearne*, 3 Lev. 137; *Basket* v. *Basket*, 2 Mod. 200; *Dann* v. *Spurrier*, 3 B. & P. 399; *Layton* v. *Pearce*, 1 Doug. 14; *Penny* v. *Porter*, 2 East, 2; *Price* v. *Nixon*, 5 Taunt. 388; *Alexander* v. *Thomas*, 16 Q. B. 333; *Disbrough* v. *Neilson*, 3 Johns. Cas. 81; *Smith* . *Sanborn*, 11 Johns. 59; *Reed* v. *Kilburn So.*, L. R., 10 Q. B. 264.) The option to terminate the defendant company's license was to be exercised, if at all, within ten days after the close of any year; after that the obligee may exercise the option. (13 Edw. IV, fol. 4, pl. 12; *Bold* v. *Molineux*, Dyer, 18*a*; 28 How. 8; *Abbott* v. *Rockwood*, 3 Croke, 594 [18 Jac.]; *Studholme* v. *Mandell*, 1 Lord Raymond, 296;

*McNitt* v. *Clark*, 7 Johns. 464; *Patchin* v. *Swift*, 21 Vt. 292, 297, 299.)

*Marshall P. Stafford* for respondent. Under an alternative contract the option is always with the party who is to perform, unless the contrary is expressly stated. (*Smith* v. *Sanborn*, 11 Johns. 59; *Stevens* v. *Howe*, 3 Sup. Ct. 142; *Disbrough* v. *Neilson*, 3 Johns. Cas. 81; *Manvel* v. *Holdridge*, 45 N. Y. 151.) The failure to pay $4,000 at the stipulated time was an exercise of its option by the company and an election to incur the risk of having its license revoked. (*Brooklyn O. R. Co.* v. *Brown*, 61 N. Y. 644.) The company having exercised its option and elected not to pay more than the royalty provided for on each instrument, the parties of the first part were limited to the single right to cancel the company's right to manufacture. (*Manvel* v. *Holdridge*, 45 N. Y. 151.)

ANDREWS, J. It is a just inference from the contract, giving due force to all its provisions, that the primary purpose of the patentees in entering into it, was to procure the defendant, on its own account, to undertake the manufacture of musical instruments, under the patents, subject to the payment to the patentees of a specified royalty on the manufactured articles, as a consideration for the grant of the right to use the invention. The contract, therefore, commences by granting to the company the exclusive right to manufacture and sell two specified classes of musical instruments, containing the patented improvements, during the whole time of the patent, in consideration of the payment by the company of a specified royalty on instruments of each class. The company on its part covenants to promptly commence and diligently prosecute the manufacture of instruments under the license, and to make quarterly returns under oath, of all instruments manufactured thereunder, and quarterly payments of the royalties specified. It is provided that on the failure of the company to make returns or pay the royalties, the patentees may terminate the license, but the right

to recover any royalties due at the time notice of the termination of the license is given is expressly saved.   Following the clause last referred to are two clauses which raise the question presented by the demurrer.   By the first the company promises and agrees to pay the patentees "at least the sum of $4,000 per annum for each and every year from the 1st day of January, 1882, by way of royalty above provided for, or otherwise, for the manufacture of piano fortes, containing five or more octaves, with said patented improvements, *or* else forfeit the right to manufacture piano fortes containing five or more octaves, under the foregoing license, if the parties of the first part (the patentees), shall so elect by a notice in writing to that effect, within ten days after the close of any year in which less than $4,000 is paid."   The second clause contains a similar provision for the payment of another sum of $4,000 under the same conditions, on account of other classes of instruments mentioned in the contract.   The question is whether the undertaking of the company is absolute to pay at least $8,000 in each year, so long as the patentees elect to continue the license in force, although the specified royalties do not amount to that sum, or on the other hand, whether the company has the alternative to pay the excess over the royalties, up to the sum mentioned, or to refuse to pay beyond the amount of the royalties, subject only to the hazard of forfeiting its right to manufacture at the election of the patentees.   We think the latter is the true construction.   The covenant of the company is to pay the sum stated, or else to forfeit its right to manufacture. The contract plainly contemplates alternative situations.   The company, in the natural order of events, is first to decide whether it will pay beyond the royalties, or in default of so doing, subject itself to a liability to have the license revoked. It is not strictly a covenant by the company to do one of two acts.   But having by the contract an exclusive right to use the patents on performing the conditions, its election not to pay the gross sum would terminate its right under the contract, at the election of the patentees.   A mere right of forfeit-

ure attached to a contract, is, of course, no answer to an action on a covenant of payment, or other covenant of the defaulting party.   The forfeiture may be waived, and the remedy is alternative and not exclusive.   But parties may make a forfeiture the only remedy.   The contract may give a right upon condition of payment, with a clause of forfeiture if the payment is not made, and make that the only consequence. This, we think, was the intention of the parties in this case.   It is quite conceivable that the patentees, under given circumstances, might deem it for their interest to continue the contract, although the royalties in a particular year might be less than $8,000.   By the clause in question, they reserved the right to resume the control of the patents, in case the royalties did not amount to that sum, and the company elected not to pay any thing in excess of the royalties.   So also, the company in view of the prospects of the business, might deem it for its interest to retain the exclusive right given by the contract, although to do so might require in a particular year the payment of a sum beyond the royalties.   The construction insisted upon by the plaintiff gives no force to the alternative words "or else" in the covenant in question.   It is quite significant that in the clause immediately preceding, providing for a forfeiture for non-payment of royalties, the right to recover royalties unpaid at the time of the forfeiture is expressly reserved.   It strengthens the construction that the remedy by forfeiture, given in the succeeding clauses, was intended to be exclusive. By the plaintiff's construction, the company bound itself absolutely to pay each year during the life of the patents, the sum of $8,000, whether the patents proved to be valuable or not, and although not an instrument was manufactured.   If it was the intention that the company should each year pay a minimum sum of $8,000 absolutely, we should expect to find that intention expressed in direct and unambiguous language.   We think the reasonable construction of the contract, and one which gives force and meaning to all its provisions, is that which while it makes the liability of the company absolute as

to royalties, makes it conditional as to payments in excess of royalties.

The judgment should, therefore, be affirmed

All concur.

Judgment affirmed.