(52 App. Div. 78.)

## TATE v. NEARY.

(Supreme Court, Appellate Division, Fourth Department. May 29, 1900.)

1. LEASE—COVENANTS—ASSIGNEE—LIABILITY.
    Where a corporation leased premises to H. for 99 years, for a yearly rent, in such amount, not to exceed 5 per cent. of the original price of the lot, as might be fixed by an assessment of the corporation, and H., with the consent of the corporation, assigned the lease to the defendant, the defendant became chargeable with the rent.

2. SAME—FAILURE TO TAKE POSSESSION.
    Where leases were assigned to the defendant to two lots which were owned by a corporation, the rent to be paid according to an assessment of the lessor, and the assignee paid the assessment on one, but resisted the payment on the other, because he had never taken possession of the lot, he was liable for the assessment on the latter, since by paying the rent of one he acknowledged the validity of the assessment, and could

not absolve himself from liability on the other by refusing to enter into possession.

**3. SAME—FORFEITURE OF LEASE.**

The fact that a lease contained a clause authorizing the lessor to forfeit the instrument and sell the improvements to pay the rent does not estop the lessor from bringing a direct action therefor, since the plaintiff was at liberty to elect which remedy he would pursue.

**4. SAME—VALIDITY OF LEASE.**

The fact that a lease made to the assignor of the defendant extended beyond the stipulated life of the corporation executing it does not invalidate the instrument, where the corporation possessed an absolute title to the property, since the termination of its existence could not shorten the period of the tenancy.

Appeal from trial term, Jefferson county.

Action by Joseph Tate, as receiver, against Edward H. Neary. From a judgment in favor of defendant, plaintiff appeals. Reversed.

The Round Island Park Company was a domestic corporation, of which the plaintiff was the receiver at the time of the commencement of this action. The said corporation, on the 28th day of September, 1880, leased to one John G. Harbottle lot No. 329 of its plot for the period of 99 years. This agreement provided that the lessee was to pay "therefor, to the said party of the first part, their successors or assigns, as and for a yearly rent for said demised premises, such amount as may from time to time be fixed and determined as an assessment of the party of the first part, of not to exceed five per centum of the original price fixed for said lot in October, 1879, at such time or times in each year of said term as the same may be required by said party of the first part, or its successors or assigns, also paying any and all taxes that may be assessed upon said lot by any state courts, township, or village authority, or paying the proper pro rata portion of any such tax as may be assessed upon the whole tract of land belonging to said Round Island Park, and of which this lot is a part; subject, however, nevertheless, and this lease is granted and accepted according to the rules and regulations which may from time to time be adopted and promulgated for the government of said park, and which are hereby made part of this instrument, as fully, to all intents and purposes, as if they were incorporated herein." Said lease further provided "that the said party of the second part, for his executors, administrators, and assigns, does covenant, promise, and agree" to pay said assessment within 30 days after notice of the same, "with the further provision that if not paid" within "one year from the date of said first notice the lease to be forfeited, and the improvements on said land may be sold at public sale by said corporation," and provision is also made for the manner of such sale. On April 6, 1891, Harbottle assigned his title and interest in the lease to the defendant by a written assignment under seal, and written consent to this transfer was given by the association conformably to its rules. Harbottle acquired from plaintiff in 1882, by an instrument similar to the foregoing, lot No. 330 on said island, and transferred the same also by written assignment to the defendant in 1883. The defendant also owned two other lots, one of which came to him by lease directly from the association, and the other by assignment from its lessee, but the rent and taxes have been paid by him on these two lots, so they are not in question in this case. Assessments were made from year to year, and during Harbottle's tenancy he paid as they were levied upon him. The defendant also paid the assessments as rent on lot No. 330 from the time of the assignment to him in 1883 until the year 1892, and that on lot 329, which he acquired in 1891, he paid for that year. This action was commenced by the receiver November 12, 1897, to recover the rents on these lots, together with the taxes which are provided for in the original lease or agreement.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

James C. Foley, for appellant.
E. H. Neary, in pro. per.

SPRING, J.   The proof is clear that the assessments of the 5 per centum on the original value of each lot assigned to defendant were made conformably to the rules and regulations of said association, and that proper notice thereof was received by the defendant.   The original agreement expressly covenanted that the manner of paying rent by the lessee was to meet the assessments, which were limited to 5 per centum of the value of each lot as fixed and determined by the association in 1879.   This was therefore a covenant to pay rent, and hence ran with the land.   Bedford v. Terhune, 30 N. Y. 453–460; Frank v. Railroad Co., 122 N. Y. 197, 25 N. E. 332; Dolph v. White, 12 N. Y. 296–301; Wood, Landl. & Tenn. § 336; Fennell v. Guffey, 155 Pa. St. 38, 25 Atl. 785.   Consequently the defendant as assignee became chargeable with their payment.   Tayl. Landl. & Ten. § 450; 1 Washb. Real Prop. (3d Ed.) 438; Real Property Law, § 193 (chapter 547, Laws 1896).   The lessee assigned his lease to the defendant in its entirety, not reserving a fragment of the time or any of the rent in himself. This created a privity of estate between the lessor and the defendant, and that was recognized by the latter, as he attorned directly to the original lessor.   He did not assume to deal with his assignor, and the latter apparently made no claim to any interest in the lots.   The defendant's substitution for Harbottle was complete, and this constituted an adequate basis for causing a direct liability to inure to the association.   Stewart v. Railroad Co., 102 N. Y. 607, 8 N. E. 200.

It is urged that because defendant never went into possession he is not liable for rent, within Damainville v. Mann, 32 N. Y. 197.   In that case the defendant, Mann, was the assignee of an undivided two-thirds of the demised premises, while one Hatch was the assignee of the remaining one-third, but had never been let into possession.   The assignee of the larger share occupied the entire leased land to the exclusion of Hatch, enjoying all the fruits of the premises, and the court held the occupant alone was chargeable with the payment of the rent. In that case Hatch got a mere naked right, and the possession which it was incumbent upon his assignor to vest in him did not accompany the assignment.   He could not oust the occupant, as he was confessedly in lawful possession, for his tenancy extended to an undivided two-thirds of the land.   An important distinction in the present case lies in the fact that here the assignment was for the entire term, and where that is its character possession is not essential for liability to be incurred on the part of the assignee.   He stands for his predecessor in interest, and that creates the requisite privity.   As was said in Wood, Landl. & Ten. § 335: "A person who has accepted a valid assignment from the lessee, although he has not taken possession of the premises, becomes liable for rent subsequently accruing, and for breaches committed subsequently to the assignment of such of the lessee's covenants as run with the land."   See, also, Chaplin, Landl. & Ten. § 351.   The following is from the opinion in Walton v. Cronley, 14 Wend. 63, 64: "So, where the lessee makes an absolute assignment of the whole term, the assignee and his representatives are

liable upon all the covenants which run with the land; and that, whether the assignee took the actual possession of the premises or not." Pingry v. Watkins, 17 Vt. 379; Babcock v. Scoville, 56 Ill. 461; Tate v. McCormick, 23 Hun, 221.

So far as I have been able to find, the cases which make the liability of the assignee of a lease dependent upon possession have in them some other controlling circumstance.　There exists either a reservation of part of the demised estate in the assignor, the inability of the assignee to obtain possession, or that the instrument was merely designed as collateral security, or a kindred significant fact which dominates the decision.　I have been unable to find any authority to the effect that where there is an assignment of the entire estate ratified by the lessor, and where actual occupancy rests wholly with the lessee, which holds that he must in fact go into possession before he can be made to pay rent to the lessor.　The moment he accepts an absolute assignment of the entire estate, he is liable to the lessor on the covenants in the original lease.　But in this case we need not be driven to that rule to attach liability to the defendant.　He has paid rent on every one of the lots transferred to him, and pursuant to assessments made in compliance with an agreement identical with the one referred to.　He not only accepted the assignments, but recognized the method adopted by the association for arriving at its yearly rent.　After this manifest acknowledgment of his obligation to pay rent according to the covenant in the lease, he certainly cannot expect to be absolved from his self-assumed liability because he voluntarily refrained from going into the actual possession of the premises.　That would enable him to keep a leash on his right to this long tenancy if it should prove valuable, but to sever it the moment the burden exceeds the benefits, although retaining the nominal leasehold title in himself.

Again, the point is pressed that, because the agreement provided for a forfeiture in the event of nonpayment of the rent, no other remedy is available to the lessor.　By the covenant in the agreement, the lessee unconditionally agreed to pay the yearly rent as fixed by the party of the first part.　The right of forfeiture is another remedy, and additional security to the lessor.　The rent must be paid within 30 days after notice.　The lessee, "for his executors, administrators, and assigns, does covenant, promise, and agree　*　*　*　well and truly to pay" said assessment.　After the expiration of that period, the lessor could enforce payment by suit.　The debt then becomes due.　No forfeiture of the lease occurs, and no public sale of the improvements by reason of such forfeiture can be had until one year has elapsed from the date of such 30 days' notice.　The notice requiring payment within the 30 days is of no significance unless it can be followed by an enforcement of the rent.　The lessee might withhold payment and defy collection until the date of the forfeiture is close at hand, if there is not an existing debt after the 30 days have expired.　If forfeiture had been the only remedy, the agreement would have made to date one year from the notice of the assessment, without any provision exacting payment within the 30 days. The vesting of the title or interest in the lessee was immediate, and

did not depend upon the payment of rent as a precedent condition. The contract in the case of Wing v. Ansonia Clock Co., 102 N. Y. 531, 7 N. E. 621, upon which respondent's counsel relies to support his contention, is radically different from the present one. In that case the plaintiff and one of the defendants were patentees of certain manufacturing instruments which the defendant company agreed to manufacture and sell. The company agreed to pay as royalties to the patentees $4,000 annually, "or else forfeit the right to manufacture" under their license, if the patentees "shall so elect by a notice in writing to that effect within ten days after the close of three years in which less than $4,000 is paid." It was held that the manufacturer had the right to pay the sum stated or forfeit the right to manufacture. But it was expressly held that "a mere right of forfeiture attached to a contract is, of course, no answer to an action on a covenant of the defaulting party"; that is, the fact a forfeiture is provided for does not annul an unqualified promise to pay. The two remedies may be correlative, and they are not inconsistent. In the case cited there was an alternative liability against the defendant, but the option rested with it to determine which horn of the dilemma it would take, and it made the election. Usually, the forfeiture is at the election of the party for whose benefit it is made, and that is the intention of the parties to this agreement. The fact that the lease to Harbottle extended beyond the stipulated life of the corporation does not invalidate the agreement. Nicoll v. Railroad Co., 12 Barb. 460–465, affirmed in 12 N. Y. 121–128; People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255. The title of the association was absolute, and, even though its life terminated, it could not cut short the period of tenancy.

The judgment is reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.