## LIABILITY OF AN ASSIGNEE OF A LEASE WHO NEVER TOOK POSSESSION.

Common Pleas Court of Franklin County.

JEAN MOORE ET AL. V. CINCINNATI MINING COMPANY.

Decided, December 20, 1922.

*Lease—Transfer by Assignment to Successive Assignees—Recovery of Rents not Dependent upon Privity of Contract but upon Privity of Estate—Assignee Liable Notwithstanding he never took Possession.*

An assignee of a lease through successive transfers from the original lessee, who has been at liberty at all times to enter into possession, is liable for rents and royalties from the date of his acceptance of the assignment, notwithstanding he at no time entered into actual possession of the leased premises.

*Booth, Keating, Pomerene & Boulger,* for plaintiff.

*Todd & O'Donnell,* of Columbus, and *Maxwell & Ramsey,* of Cincinnati, for defendant.

ROGERS, J.

The action is to recover certain rents and royalties claimed to have accrued under a coal mining lease of certain described real estate with the appurtenances situate in Athens county, Ohio. The case is submitted to the court without a jury on the pleadings and evidence consisting of an agreed statement of facts.

The pleadings and evidence in substance and effect are as follows: the lease was duly executed on December 31st, 1892, by one Dorcas Allison, then the owner of said premises, to the Athens Coal Company, a corporation of West Virginia, its successors and assigns, for a period of thirty years. The lessee as part of the consideration for said lease, for itself, its successors and assigns, covenanted with the lessor, her heirs and assigns, to pay a royalty of 7 cents per ton during said term for all lump coal mined, provided the sum equalled 75 tons, or more, on the average for each working day, payable on the

25th of each calendar month for the coal mined the preceding month; and providing further that if said coal mined did not equal 75 tons a day for every month, then to pay upon the amount of 75 tons at least for each working day per month.

After certain successive assignments of the leasehold estate were made, the Ludwig Coal Company, a corporation, became the owner of said leasehold. And a dispute having arisen abount the rental of houses on the premises, a supplemental agreement of lease was duly executed on Febrcary 27th, 1907, between the then successors in title of the lessor of said premises and the Ludwig Coal Company whereby it agreed to pay rent at the rate of $2.50 per month for the houses on the premises not occupied by employees of said company, and said obligation was to be binding during the remainder of said lease.

Thereafter, said leasehold was successively assigned by divers transfers by and through respective assignees thereof until March 26, 1918, when it was duly assigned to the defendant. Although the defendant accepted said assignment, and has without hindrance at all times since said assignment, had the right of possession, it never in fact went into actual possession of the leased premises, nor operated the mines thereon either by itself or through others. However, defendant paid the rents and royalties maturing under the provisions of the lease up to March, 1920. On February 9th, 1920, the defendant notified by letter the plaintiffs who had then and for some time theretofore become through divers transfers the owners of the estate in fee in revision from the original lessor, Dorcas Allison, of its desire to pay up the royalties and surrender said lease as of March 1st, 1920, advising the plaintiffs that the letter might be considered by them as formal notice of such surrender. No reply appears to have been made to said letter nor assent of any kind given to the surrender of said lease by the plaintiffs. The amount of the rents and royalties having accrued under said lease at the time of the suit are not in dispute; but, under the facts, the substance of which are above related, defendant denies any liability therefor.

The main, if not the only question, in the case is this: Is

the defendant, as assignee of the lease through successive transfers from the original lessee, liable for the rents and royalties in question, although it has not been in actual possession of the leased premises, but at all times and without hindrance since the assignment has had the right of possession thereof?

The right of the plaintiffs to recover, if at all, is based, not upon any privity of contract with plaintiffs, but upon privity of estate. Defendant by reason of successive assignments of the leasehold from the original lessee, supplemented by the later agreement of lease with one of the intermediate assignees, stepped into the shoes of the original lessee and intermediate assignees, and the privity of estate raises the liability, if at all, to pay such rents and royalties. The only question is as to when this privity of estate attaches so as to render the defendant, as assignee, liable for the rents and royalties expressly covenanted to be paid under the original lease and later supplementary agreement.

There are two lines of authorities on this subject. According to one line of authority, the assignee does not become liable to the lessor or his successors in title until the former takes actual possession of the leasehold estate. This doctrine was first announced in England by Buller, J., in *Eaton v. Jaques,* Second Doug. 4, K. B. 455, wherein he declared, in substance, that mere nominal assignees with the naked right should not be liable, but only substantial assignees in the actual enjoyment of the estate should be liable. This doctrine, however, was subsequently repudiated in *Williams* v. *Bosanquet,* 1. Broad & B., 238. 263, wherein Dallas, C. J., in referring to *Eaton* v. *Jaques, supra,* said:

"It has been further said that there is no privity of estate because possession was not taken; * * * but it is not so; for there is privity of estate, if legal possession, that is, acceptance of the thing assigned by acceptance of the assignment, be equivalent to actual entry; which it is, if there be justness in the observations already made; * * * in the case of actual acceptance, assignees would, of course, be liable, and they may accept without entry; the assignment is not compulsory on them to take; if they do not take, they will

not be liable notwithstanding the assignment; but if they elect to take, then it is their taking, but not singly by the assignment they become liable as assignees. To the case of *Dale* v. *Westerdell* (7 T. R. 312) and *Stone* v. *Evans* (Woodfall's L. & T. c. 3 s. 15), it will be sufficient merely to refer, as showing the disapprobation which Lord Kenyon entertained and expressed of the decision in *Eaton* v. *Jaques;* and to this it is hardly necessary to add, what is well known, that it did not meet with the approbation of the profession at large. Remaining, however, as an authority, though a single authority, when this present case came before this court on demurrer, it was directed by the late Chief Justice to be turned into a special verdict, that we might have it argued before all the judges, and collect their opinion on the point. This has accordingly been done; and we have authority to say, that in the opinion of a great majority, *Eaton* v. *Jaques* is not to be considered as having been rightly decided.''

Other cases in England might be cited, discrediting the doctrine in *Eaton* v. *Jaques, supra,* and may be found in the references hereinafter made.

Some authorities in this country have followed the ruling of *Eaton* v. *Jaques.* As for example, *Damainville* v. *Mann,* 32 N. Y. 197, announced a like doctrine, and the same is true of other cases in that state. Still other cases, however, are not in accord with the principle announced in 32 N. Y. and the New York courts refuse to follow it. In this connection may be mentioned *Tate* v. *Neary,* 52 App. Div. 78, 65 N. Y. S. 40. Likewise in Vermont some of the cases sustained the doctrine in *Eaton* v. *Jaques,* while others repudiated it. This question is exhaustively treated in a note to *Kanawaha-Juley Coal & Co. Co.* v. *Sharp,* 52 L. R. A.. at page 981, where the authorities are collated. See also note to the same case in Ann. Case 1916 E. 801. The conclusion is reached by the authors of the respective notes that the doctrine in *Eaton* v. *Jaques* is not approved generally by the decisions. And I think it may be said that the overwhelming weight of authority, and as it appears to me, supported by the best reason, is to the effect that an assignee in fact is chargeable with the payment of the rent covenanted to be paid in the lease, altrough he has not taken actual

possession of the demised premises. His liability is determined by his right to possession and not his actual possession, if he has accepted the assignment. Quoting from 16 R. C. L. Section 356, where this subject is discussed and many cases are cited, the author says:

"According to the generally accepted view an assignee in fact is chargeable with the performance of covenants running with the land, although he has not taken actual possession of the demised premises. The liability of an assignee for rent is determined by his right to possession and not by actual possession. and he is therefore held liable though he may not have entered into possession if he has accepted the assignment, and *a fortiori* he can not escape liability by merely abandoning the possession. Some authorities. however, have taken the view, based, it seems, on the discredited English case of *Eaton* v. *Jaques* (2 Doug. K. B., 455), that the assignee is not liable for rent until he actually enters, though he has accepted the assignment." See also 24 Cyc. 1180 and cases.

After a careful consideration of *Sutliff* v. *Atwood*, 15 O. S. 186 and other cases in Ohio cited by counsel, I am not persuaded that they throw any light upon the subject before us. The court in neither of the cases was considering the question involved here, nor anything like it. While there are a few words and phrases here and there used in the cases resembling the language used in *Eaton* v. *Jaques,* in neither of the cases was the question in the instant case before the court. Hence, I see no reason because certain expressions were used in former decisions in Ohio, without the court having a similar question to the one before the court, why I should draw the vague inference therefrom that that court would ultimately follow the discredited decisions on the subject before us. I find, however, in *Cincinnati* v. *Goodhue,* 20th Bull. 370, that Taft, J., gave expression, although it may be *obiter,* to the same view taken by the great majority of courts throughout the land, on this subject when he said:

"Entry is not necessary to bind the assignee of a lease by the covenants that run with the land. An accepted assignment

creates privity of estate between the lessor and the lessee and the liability to pay rent under the lease begins upon such a circumstance.''

Many authorities are cited by counsel for plaintiff bearing upon this subject, in addition to those referred to herein.

Upon principle and authority I am satisfied that the liability of the assignment of the the leasehold growing out of the privity of the estate, attaches for rent when the privity of estate begins, to-wit, on the due assignment of the lease which is accepted, and his liability does not await the actual taking possession by the assignee.

Counsel further make the claim that defendant surrendered the leasehold. I am unable to reach that conclusion. Surrender is a matter of contract. The facts do not show any express or implied contract to surrender the lease. The notice that the defendant would surrender on a day named was at best an unaccepted proposition to surrender the lease, and never ripened into an agreement between the parties, and could not do so unless the circumstances showed that the plaintiffs accepted the terms of the proposition.

I am therefore of opinion that the plaintiffs are entitled to recover the rents and royalties of the defendant as prayed for, and a finding and judgment accordingly is entered with costs.

Motion for new trial overruled and exceptions noted.