INTERNATIONAL PHOTO RECORDING MACHINES, INC., Plaintiff, *v.* MICROSTAT CORPORATION, Defendant.

Supreme Court, Special Term, New York County, April 25, 1944.

*Jacob M. Rosenfeld* for plaintiff.

*Emanuel H. Reichart* and *J. Bertram Wegman* for defendant.

PECK, J. This is an action to reform a contract on the ground of mutual mistake and for a money judgment. There are three questions: (1) the meaning of the contract on its face; (2) the necessity or propriety of reformation; (3) the authority of the equity court to render only a money judgment, upon a finding

that the contract on its face means what the plaintiff claims was intended, without reformation.

The contract is a patent license agreement by which the plaintiff licensed the defendant to use microfilming machines patented and owned by the plaintiff, on payment of a sliding scale of royalties (par. 2). The agreement further provided:

" 3. MICROSTAT covenants.and agrees that the minimum royalties payable in each year during the life hereof shall be as follows:

" For the first year, $5,000.

" For the second year, $7,500.

" For the third year, and each succeeding year during the life hereof, $10,000.

" In the event that the specific royalties payable, as per Paragraph 2 hereof, in any one year do not equal the minimum royalties as set forth above, MICROSTAT shall have the right to pay the difference between the minimum royalties paid and the minimum royalties due, in cash, in order to keep this license in full force and effect. * * *

" 12. In the event of any default by MICROSTAT arising hereunder INTERNATIONAL shall have the right to cancel this agreement upon sixty days notice * * * . * * *

" MICROSTAT shall also have the right to cancel this agreement upon sixty days notice, by registered mail, to INTERNATIONAL at any time after the second year of the life hereof * * * "

The defendant paid the minimum royalties for the first year and one installment on the second year, then refused to make further payments. The plaintiff brought suit in the City Court for two unpaid installments and was met with the defense that the contract granted the defendant the right, at its election, to make payment of minimum royalties in order to keep the license alive, but created no obligation on the part of the defendant to make such payments. The plaintiff, thereupon, discontinued that action and brought this action to reform the contract, alleging that by mutual mistake the agreement omitted to provide that the clause making it optional with defendant to pay minimum royalties applied only to the royalties after the first two years.

The evidence covered the negotiations and drafts leading up to the making of the contract. It is perfectly clear from the evidence that the plaintiff insisted upon a guarantee of royalty payments of $12,500 during the first two years, and that the defendant accepted that condition and the agreement was drawn

to carry out that mutual intention. There was, however, no mistake in the drafting of the agreement. The agreement was rather hurriedly drawn and perhaps without sufficient care, but it was read over by the principals and consciously approved. The truth of the matter is that the agreement was worded exactly as the parties intended, with the mutual understanding that the language provided a two-year guarantee of minimum royalty payments, but after continuing such payments for fourteen months the defendant looked for relief and found what it thought might be a loophole in the agreement. Then the plaintiff, prompted by the defense in the City Court action, decided that the wording of the agreement was not as ironclad as it had thought and shifted to the present action for reformation and to the contention that there was an omission in the agreement by mutual mistake.

There being no mistake in the drafting of the agreement, what does the agreement mean as drawn? The defendant contends that the provision for the payment of minimum royalties constituted no obligation on the part of the defendant but only an option to the defendant. So interpreted, the agreement becomes wholly illusory because it does not contain the usual covenant by the licensee to pursue the business, and if there was no obligation to pay even minimum royalties, there was no obligation at all. As for the provision against cancellation during the first two years, patent counsel for the defendant, on the witness stand, frankly took the position that the provision was meaningless, and that the defendant might cancel the agreement at any time. Certainly the agreement should not be given such an abortive reading if it can be given a constructive reading.

The defendant relies on the cases of *Wing* v. *Ansonia Clock Co.* (102 N. Y. 531 [1886]) and *Ebert* v. *Loewenstein* (42 App. Div. 109 [1899]). In the former case, the licensee agreed to pay royalties of at least the sum of $4,000 a year " ' *or* else forfeit the right to manufacture * * * under the * * * license ' ". As the court said, " The contract plainly contemplates alternative situations ", and the court held that the intention of the parties was to make forfeiture the only consequence of not making minimum payments. In the latter case, it was " ' agreed by the party of the second part that the royalties he shall pay unto the party of the first part, the above rate, shall amount in the aggregate each separate year to at least Three Thousand Dollars ($3,000), and should the accumulated royalties at the royalty named not reach the sum

of Three Thousand Dollars, the party of the second part be entitled to continue this license by making up the deficit by payment of cash.'" The royalties the first year did not amount to $3,000 and the court at Trial Term held that the licensee had agreed in that event to pay $3,000. The Appellate Division, by a divided court, held that the minimum royalty provision was not a guarantee on the part of the licensee, but gave a right to the licensee to retain the license by making minimum payments, and a right in the licensor to cancel the license if the minimum payments were not made. In neither case did the agreement contain a counterpart to the provision in the present agreement against a cancellation by the licensee during the first two years.

The agreement must be read in its entirety, with a view to giving the whole and each part meaning, and avoiding a construction which would make the agreement illusory. The only construction which is reasonable, or gives this contract any meaning, is that defendant was obliged to make the minimum payments for two years, and after that time might either keep the license alive by continuing the minimum payments or cancel the agreement. It seems amply clear upon the face of the agreement that this was the parties' intention.

Paragraph 3 starts with the unqualified covenants on the part of the defendant to pay at least the minimum royalties. The next paragraph does not destroy that covenant, as the defendant would have it, but establishes the right of the defendant, in the event that the specific royalties do not equal the minimum royalties, to make up the difference and keep the license in full force and effect. The only provision of the agreement calculated to relieve the defendant from the obligation to pay minimum royalties is paragraph 12 which gives the defendant the right to cancel the agreement after the second year. The court has no hesitancy in holding, therefore, upon the face of the agreement and without the aid of parol evidence, that the agreement binds the defendant to make minimum royalty payments for two years.

Defendant then takes the position that the court may not, upon such a finding, award a money judgment, but must dismiss the complaint because of the failure of the case for reformation. This contention is based on the premise that a court of equity may not, on failure of an equitable cause, grant wholly legal relief and so deprive the defendant of a jury trial. The premise is sound enough; the question is its applicability to the case. The defendant asserts that the agreement is not ambiguous and

parol evidence should not be considered, with which assertion the court agrees, so there would be no jury question at law and no deprivation of a jury trial if the court here and now renders judgment in accordance with its reading of the contract.

The old cases cited by the defendant (*Oakville Co.* v. *D. P. Tack Co.*, 105 N. Y. 658 [1887]; *Husted* v. *Van Ness*, 158 N. Y. 104 [1899]; *Greene* v. *Smith*, 160 N. Y. 533 [1899]) did hold that where an action for reformation fails, the plaintiff is not entitled to a judicial construction that the contract needs no reformation and, as drawn, means the same as if it were reformed. As stated by the court in the first of these cases: " That is a purely legal question which does not belong to the equitable action before us. It will arise, if at all, when one party sues the other for royalties claimed to be due  *  *  *. The remedy at law is obvious and adequate and no ground exists for the interposition of equity."

Here the plaintiff is suing for royalties claimed to be due. That is the ultimate relief requested. The purpose of the reformation requested is to form the basis for the claim to royalties. Finding, as the court does, that the plaintiff's claim to royalties is well grounded in the contract as written, and that reformation is not necessary or in order, must the court dismiss the action, after trial, and remit the parties to the idle and wasteful ceremony of another action on the law side of the court?

There has been considerable rebellion of judicial and legal opinion of late against the early and arbitrary rule that where an equitable cause fails the equity court is obliged to dismiss the complaint or transfer the case to the law side. (See *Small* v. *Kronstat*, 175 Misc. 626; *Dobschiner* v. *Levy*, 179 Misc. 416; N. Y. L. J., Feb. 2, 3, 10, 1925, correspondence on editorial pages.)

The cases cannot be altogether reconciled, suggesting the need of re-examining and rationalizing the rule. The equity court should not impinge upon the law field to the prejudice of substantial legal rights, but there is no need or justification for denying jurisdiction and multiplying suits for the sake of preserving formal distinctions which are supposed to have been abolished (Civ. Prac. Act, § 8). Considerations of substance rather than form should be determinative, and as the only substantial difference between a trial at law and a trial in equity is in the right to a jury at law, the jurisdiction of the equity court to grant purely legal relief, after the equitable cause has failed, should depend on whether the objecting party would

be entitled to a jury trial if the action were at law. While the cases in which the actions were dismissed or transferred to the law side do not always make it clear that the reason was to protect a right to a jury trial (*Jackson* v. *Strong*, 222 N. Y. 149), that is the rationale of such dispositions in the more recent decisions (*Westergren* v. *Everett*, 218 App. Div. 172).

If there were an ambiguity here, requiring the weighing of parol evidence to determine the parties' intention, the defendant would be entitled to a jury's determination of the question. Where, however, there is no ambiguity or need for taking parol evidence, there is no jury question and the court at law would construe the contract without submitting any question to the jury. There is. no reason, therefore, why the court sitting in equity should not render the same judgment that it would render at law. In so doing, it would be exercising a narrower jurisdiction than its jurisdiction to take parol evidence and reform the contract. Indeed, the court must find the meaning of the contract on its face as a preliminary to determining whether the contract should be reformed. It would be irrational to hold that the court might then reform the contract on the basis of parol evidence but might not enter a judgment on construing the contract without parol evidence.

In conclusion, whether the equity court, upon finding that a contract should not be reformed, should dismiss the complaint or transfer the case to the law side or render a money judgment for the plaintiff, should depend upon whether the court finds that it is necessary to. consider parol evidence in construing the contract. If so, the case should be dismissed or preferably transferred to law. If not, the court should enter judgment in accordance with its construction of .the contract.

Judgment is accordingly awarded to the plaintiff for the amount of the unpaid installments, with interest.

The foregoing is the court's decision herein. Settle judgment. Ten days' stay of execution. Thirty days to make a case.