HENRY R. BERNARD, Appellant, *v.* GOLDEN GATE MANU-
FACTURING COMPANY, a Corporation, Respondent.

First Department, May 2, 1919.

Sale — action for breach of contract by defendant in failing to manufacture and sell articles — when option to terminate contract not exclusive remedy.

In an action to recover damages for defendant's failure to manufacture and sell articles pursuant to contract, the defendant neither pleaded nor claimed inability to manufacture or sell the minimum number of articles specified, its sole contention being that the option of terminating the contract was the plaintiff's exclusive remedy. Provisions of the contract construed, and

*Held,* that a judgment dismissing the complaint should be reversed and a verdict directed in favor of the plaintiff for a balance due him on the theory that the defendant was obligated to manufacture and sell a certain number of the articles during the first year of the contract.

The option reserved to the plaintiff under his agreement with the defendant was an additional remedy for his own protection and was not intended to release the defendant of its liability, and, therefore, the plaintiff was under no obligation to exercise the option and was entitled to stand upon his rights under the contract.

APPEAL by the plaintiff, Henry R. Bernard, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 3d day of July, 1918, upon the decision of the court dismissing the complaint, both sides having moved for the direction of a verdict at the close of the case, and the jury having been thereupon discharged.

*Walter L. Post* of counsel [*Charles M. Russell,* attorney], for the appellant.

*Joseph S. Buhler* of counsel [*Dennis & Buhler,* attorneys], for the respondent.

LAUGHLIN, J.:

This is an action to recover damages for breaches of a contract in writing made by the parties on the 29th day of March, 1915. It is recited in the contract that the plaintiff was owner of certain patents granted by the United States of America and certain secret methods for the manufacture of certain heat-retaining compounds to be used in connection with heating devices, and that the parties desired that said devices should be manufactured and put on the market for sale. The plaintiff assigned to the defendant and its successors the exclusive right to manufacture, use and sell " Thermor Waterless Hot Bottles, Bed Warmers and Automobile Foot Warmers, together with the filling placed in same," under five United States patents, the numbers and dates of issue of which are specified, and any improvements and inventions relative thereto which he might acquire by invention or otherwise and under and in accordance with his secret methods or formulas which he agreed to impart to the defendant, its officers and one employee, and he also agreed to impart to them his experience in the manufacture of said devices and in compounding and preparing said filling. The defendant agreed

forthwith to manufacture or cause to be manufactured 2,000 Thermor Waterless Hot Bottles and " to use its best endeavors to market the same with a view · to testing out the manufacturing and sales possibilities of the said devices." It was agreed that the plaintiff should become general sales manager of said devices, and have a drawing account of $25 a week to be applied on account of commissions of ten per centum on the net amount received from sales through his efforts of all devices manufactured by the defendant, and a royalty or license fee of thirty cents per bottle until he received $9,500, and twenty cents per bottle thereafter, which commissions and royalties were to be ascertained and paid every three months commencing with the three months ending July 1, 1915. The defendant agreed to co-operate with the plaintiff in promoting sales by appropriating such sums for that purpose as its directors might from time to time deem advisable. The plaintiff was at liberty to resign as such sales manager after three months, and the defendant was at liberty on three months' written notice to discontinue his drawing account and agency; but in the event that the plaintiff withdrew during the first year from the employment, unless incapacitated by accident or disability, from actively pushing the sale of the devices, the royalties he was to receive were to be reduced by half. The defendant, subject to a specified minimum price, was to have the exclusive right to fix the selling prices of the devices, but such prices were to be based on the quantity sold to individual purchasers. The plaintiff agreed not to divulge said secret process to any competitor. The defendant agreed not to divulge any of the trade secrets or processes to any one other than one employee to enable him to perform the work, and such employee was also to agree not to divulge them. The defendant was given the option to withdraw from the agreement within the thirty days succeeding the sixty days from its date, and in the event that it exercised that option its license to manufacture was to cease and plaintiff was to purchase the stock on hand, finished and unfinished, and the tools and other equipment, and on his failure to do this within four months thereafter, defendant was to be at liberty to dispose of the same. The plaintiff agreed, on the request of the defendant, to protect and maintain the validity of said patents

against infringing manufacturers and dealers, and if he failed so to do, defendant had the right to do so and to charge the expenses against the royalties due or to become due to him. These provisions, and others not material to the point presented for decision, are contained in the first nine paragraphs of the agreement. The 10th paragraph provides as follows:

" If the party of the second part does not exercise the option to withdraw from said agreement provided for in Paragraph Eighth hereof, it shall manufacture and sell and deliver at least two thousand (2,000) bottles (equal to the present bottles within six (6) months from date, and at least twenty-five thousand (25,000) bottles additional in the first year from the date hereof, and make and sell at least fifty thousand (50,000) bottles during each succeeding year. In the event of the failure of the party of the second part to manufacture and sell the number of bottles or other devices hereinbefore provided, the party of the first part shall have the option of terminating this agreement forthwith, provided he purchases for cash within thirty (30) days from the close of the fiscal year all finished and unfinished stock, etc., and providing further that he pay the party of the second part the Ninety-five hundred Dollars ($9,500) provided for in Paragraph Fourth or whatever part of same he may have received from royalties. The fiscal year for the purpose of calculating the number sold shall be deemed to begin April first and end March thirty-first of each calendar year."

The 11th paragraph provides that the defendant has the right to withdraw from the agreement at any time on three months' notice to the plaintiff, and that upon such withdrawal its exclusive right to manufacture and sell such devices shall cease, and the plaintiff, in that event, agreed to purchase from the defendant the stock on hand, finished or unfinished, and the tools and other equipment, at cost within six months thereafter, and on his failure so to do defendant was at liberty to dispose of them. The 12th paragraph obligated the parties to mutual co-operation with each other to the end that the agreement should be performed in the spirit as well as in the letter thereof. The remaining paragraph provides that any sales made in Canada and other foreign countries by defend-

ant should be included in the total sales in ascertaining the royalties.

Plaintiff testified that the parties entered upon the performance of the agreement as contemplated and that the defendant continued to act thereunder until the 25th of July, 1917; that 8,427 bottles were sold during the first year, on which he received royalties, leaving a deficiency in manufacture and sales of 18,539 bottles; that on or about the 1st of April, 1916, he demanded payment on the balance but it was not paid; that he continued in the employ of defendant until April 22, 1916, and that the provisions of the contract with respect to the payment of commissions on sales made by or through him was changed so that he was to receive a salary in lieu of commissions, and that he received it; that at the expiration of the first six months he demanded a statement of account of royalties due, and did not receive the statement until March, 1916, and that although he was working in the office where the books were kept and were accessible to him, it would have been difficult for him to have ascertained the amount of heaters manufactured and sales made. He had admitted that on April 7, 1915, he gave defendant notice in writing of an irrevocable assignment to J. W. Becherer and E. A. Beck of one-third of his royalties to the extent of $2,500. That assignment was pleaded as a partial defense. It appears from his testimony that defendant, to the extent that it paid royalties, only paid him twenty per cent and deducted ten per cent for said assignees. The amount so deducted was $846.10.

At the close of the plaintiff's testimony, plaintiff rested, and defendant moved for dismissal of the complaint on the ground that the provision in the 10th paragraph of the agreement, by which the plaintiff was at liberty to terminate the agreement in the event that the defendant failed to manufacture and sell the required number of bottles or devices, constituted an exclusive remedy; and on the further ground that the agreement contained no provision for the payment of *cash royalties* except from the proceeds of sales, and on other grounds not material to be considered. The court stated that decision would be reserved on the motion, and thereupon the defendant rested and the evidence was declared closed. The defendant then renewed its motion for a dismissal, and the plaintiff

moved for the direction of a verdict for $5,561.70, being the balance of thirty per cent owing on the theory that the defendant was obligated to manufacture and sell 27,000 bottles during the first year. Nothing appears to have been stated then with respect to the assignment, and no point with respect to it is made here. It is evidently assumed, and correctly, I think, that this is not an action for royalties but for damages for defendant's failure to manufacture and sell as agreed, the damages being measured by the royalties the plaintiff would have been entitled to receive had the defendant performed the contract. Thereupon, at the suggestion of the court, defendant moved for the direction of a verdict, and it was stipulated that the court might take the case under advisement and subsequently direct a verdict in the absence of the jury with the same force and effect as if the jury were present.

Defendant neither pleaded nor claimed inability to manufacture or sell the minimum number of bottles specified in the 10th paragraph during the first year of the contract. Its sole contention is that the option of terminating the contract was the plaintiff's exclusive remedy. I am unable to agree with that construction of the contract. The plaintiff could only exercise the option on the conditions imposed by which he became obligated to purchase the material on hand and forfeit and return all royalties received. That surely would be a peculiar *remedy* for defendant's breach of the contract. Such a construction gives no force or effect to the unconditional agreement by which the defendant was to manufacture and sell the specified number of bottles during said year. It was afforded ample opportunity by the other provisions of the contract to test out the merit and salability of these bottles and to withdraw from the agreement within sixty days if it had any doubt with respect to its ability to manufacture and sell to the extent which it undertook in the 10th paragraph. The option reserved to plaintiff was an additional remedy for his own protection and was not intended to release the defendant of its liability, and, therefore, the plaintiff was under no obligation to exercise the option and could, as he did, stand upon his rights and leave the contract in force. (*Cummings* v. *Standard Harrow Co.*, 55 Misc. Rep. 601; affd., 124 App. Div. 915; 195 N. Y. 513; *Bezer* v. *Hall*

*Signal Co.*, 22 App. Div. 489; *Tate* v. *Neary*, 52 id. 78.) Defendant having failed to plead inability to obtain a market for the bottles and to offer evidence to the effect that it could not, it is unnecessary to express an opinion with respect to whether or not that would have constituted a defense.

It follows that the judgment should be reversed, with costs, and a verdict directed in favor of the plaintiff for $5,561.70, in accordance with his request duly made on the trial, with costs.

CLARKE, P. J., SMITH, SHEARN and MERRELL, JJ., concurred.

Judgment reversed, with costs, and verdict directed for plaintiff for $5,561.70, and judgment ordered to be entered thereon, with costs.