THE MATZKA CORPORATION, a corporation duly created by and existing under the laws of the State of Delaware, and WINCENTY MATZKA,

*vs.*

KELLY DRY-PURE JUICE CORPORATION, a corporation duly created by and existing under the laws of the State of Delaware, FLORIDA BLEND CORPORATION, a corporation duly created by and existing under the laws of the State of Delaware, and UNITED STATES PURE FOOD CORPORATION, a corporation duly created by and existing under the laws of the State of Delaware.

*New Castle, July* 10, 1933.

*Arthur G. Logan,* of the firm of Marvel, Morford, Ward & Logan, for complainants.

*John Biggs, Jr.,* for defendants.

THE CHANCELLOR: The first ground of demurrer is that the complainants have an adequate remedy at law. It is urged in support of this ground of demurrer, that the bill shows nothing more than a breach of contract which is adequately compensable in damages, and that a court of equity should therefore take no cognizance of it.

The contract makes a "transfer and assignment * * * to the Kelly Company of the exclusive world rights covering the Matzka processes for working and/or preserving, without the use of preservatives, fruits, vegetables and coffee and all kinds of food and drink products * * * during the life of the longest patents taken out and under all secret processes so long as any business is being carried on under any of them, these rights covering the entire world, excluding only Belgium and that portion of the British Empire lying outside of North and South America and contiguous islands." (I make no mention of the special product of eggs, because the details with respect to that product are immaterial, the contract before its conclusion applying the broad grant of rights evidenced by the above language to that commodity as well as to all other foods.)

The language of the grant which I have just quoted appears in the first paragraph of the contract and the comprehensiveness of its phraseology is either repeated or impliedly accepted by the parties to the contract in later paragraphs, as expressive of their intent. I refrain from pointing out the language found in those later paragraphs. It is sufficient to say that nowhere in the contract have I been able to find any language which in any sense curtails the broad grant of right conferred by the language hereinbefore quoted.

The defendants argue that, as the contract does not assume on its face to transfer a legal title to the processes and patents, it is but a license agreement and not a conveyance; and this view, the defendants argue, is confirmed by the fact that the contract calls for royalties to be paid by the Kelly Company to the Matzka Corporation. The use which the defendants seek to make of this argument is, that if the contract is not a conveyance of title, as they contend, a proper case for cancellation is not presented; but if it is a mere license agreement calling for royalties, as they contend it is, then the only remedy for its breach, they argue, is an action at law for damages.

The mere fact that an instrument is not in point of form an assignment of a patent, does not necessarily mean that it is not one. The right which a patentee holds under our Act of Congress is a monopoly for the designated time "to make, use and vend." If, however, an exclusive right is conferred by a patentee upon another to make, use and vend the patented article within a certain district to the exclusion even of the patentee, in that case the law regards it in point of substance, though not of form, as an assignment and not a license. It was so stated by Mr. Justice Gray, speaking for the Supreme Court of the United States in *Waterman v. Mackenzie,* 138 *U. S.* 252, 11 *S. Ct.* 334, 335, 34 *L. Ed.* 923. The legal effect of such a grant of right is to give to its conferee the entire rights which the patentee possessed in the defined district and is therefore just as broad as though the formal language of assignment had been employed. "Whether," said the court in that case, "a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." See, also, *Paulus v. M. M. Buck Mfg. Co.,* (*C. C. A.*) 129 *F.* 594, 596; *Johnson R. R. Signal Co. v. Union Switch & Signal Co.,* (*C. C.*) 59 *F.* 20. It is to be borne in mind that what the contract in this case is con-

cerned with is a mere process. There can be no making or vending of a process in the sense in which those terms are employed when they refer to physical things which are the result of invention and the subject of patent. The use of the process and the licensing of others to use it constitute the practical aspects of its enjoyment. The contract in question confers the right upon the Kelly Company to use it and to license others to use it. The rights of use and license to use are conferred by specific mention, and they are the rights which are spoken of in the first paragraph of the contract as "exclusive world rights" lasting as long as the patents live and as long as the secret processes are practiced. While the granting of these rights is in the form of a licensing arrangement, yet what is conferred is as broad in its substance, exclusiveness and duration as if there had been a technical assignment of title operative within the defined area. Where that is the case the equitable remedy of cancellation is as properly available as it would be if the instrument were a formal deed of assignment. If a licensee should violate the entire spirit and purpose of such a contract as is now before the court by refusing without just cause to exploit the process and disseminate its practice as contemplated by the parties, it would be highly inequitable to deny to the discoverer and owner the relief of cancellation. In the case of *In re Waterson, Berlin & Snyder Co.*, (*C. C. A.*) 48 *F.* (2d) 704, 709, it was said that "where there has been a conveyance upon an agreement to pay the grantor sums of money based upon the earnings of property transferred, the courts have implied a covenant to render the subject-matter of the contract productive," and that rescission is allowed "where there has been a failure on the part of the grantee or assignee to act in accordance with his obligation to render the property conveyed productive." In the instant case a covenant to render the process productive is plainly implied. If there has been a complete abandonment by the Kelly Company of its duties under the

contract, as the bill alleges, and the complainant cannot be afforded the relief of rescission, it is apparent that the exploitation of the process is balked; for the Kelly Company will not act, and by insistence upon the contract as still binding, it will exclude the complainant corporation from acting, to promote the use of the process. That is a highly inequitable position for it to assume—as indefensible as the position of the traditional dog in the manger. The mere technical form in which the agreement is cast cannot serve to render the position of the Kelly Company, as it is pictured by the bill, free from equity's remedial power.

The suggestion is advanced that the complainant corporation may sue at law for the damages occasioned by the Kelly Company's alleged abandonment of the contract. That remedy, however, is not an adequate one. The compensation which the Matzka Corporation receives under the contract in consideration of the exclusive rights granted by it, is in the form of a royalty of a certain per cent. of the gross sales prices of the products in connection with which the Matzka processes are used. There is no provision for a minimum royalty. The language of the Circuit Court of Appeals of the United States in *Neenan v. Otis Elevator Co.*, 194 *F*. 414, 420, upon the question of adequacy of the legal remedy of damages, is applicable to the instant one. In that case the court said:

> "The complainant has no adequate remedy at law. No rational rule of damages can be formulated upon the facts as shown; any verdict rendered would have nothing but speculation and guesswork to support it. In such cases the right of the injured party to rescind is well recognized."

What has thus far been said rests upon the assumption that there has been an abandonment of the contract, as the bill alleges, predicated on the unexcused failure of the Kelly Company to go forward with its performance. On that assumption, the reasons hereinbefore noticed as being

advanced in support of the demurrer are not sufficient to sustain it.

The defendants, however, by their last ground of demurrer, while admitting for the purposes of the demurrer that the Kelly Company has failed to perform the contract, attack the bill as defective in that it omits to make an allegation of performance of acts required by the contract to be performed by the Matzka Corporation before the Kelly Company's failure to perform can be said to be unwarranted and therefore inexcusable. This ground of demurrer is to the effect that the complainant in a bill for rescission must show himself not to have been in willful default.

The solicitor for the complainants contends that while in a bill for specific performance a complainant must show either performance or a relieving excuse, yet in a bill for rescission no such requirement of pleading is exacted of him, because in the former he seeks the aid of equity in active enforcement of the contract, whereas in the latter he seeks the aid of equity merely to obliterate the contract. *Black* in his work on *Rescission and Cancellation* (*2d Ed.*) *Volume* 3, § 553, states the following to be the law:

> "The right to rescind a contract on the ground of failure of performance by the other party * * * cannot be claimed by a party who is himself in default in the performance of any of the obligations imposed upon him by the contract. Where a complainant, seeking the rescission of a contract, has not done all that he stipulated to do, or has not placed himself in a situation to be ready to do so, upon compliance of the other party, the court will not interpose in his behalf."

And upon the question of pleading the same author, in *Section* 664 of *Volume* 3 of his work, states the rule to be that "the bill of complaint should also show that the plaintiff is free from any fault, breach of contract, or fraud, so that he has a good standing in equity."

Whether a complainant should be required to negative any fault generally on his part and fraud, may be open to question. But when the contract which he seeks to have a court of equity declare to be rescinded because of the failure of the defendant to perform, contains within its terms an obligation on the part of the complainant to perform an act which is manifestly essential to be performed by him if the defendant is to be expected to perform, I am of the opinion that the complainant should allege performance on his part or a proper excuse for failure thereof.

The complainant's case cannot be said to be shown as complete where the bill which states it leaves room to say that the defendant's failure to perform (which is urged as a manifestation of abandonment) may very well have been justified by the failure of the complaining party to perform conditions which the contract imposes upon him as a prerequisite to the defendant's performance.

That is the situation in this case. The contract here speaks of a certain machine which appears to be necessary for the working of the Matzka process. The language of the contract is:

"It is understood that a machine capable of working four tons a day of products under the Matzka process has been built by the Jackson Company of Scotland. The Matzka Company and Matzka guarantee that the said machine together with complete drawings, plans and specifications will be delivered forthwith to the Kelly Company, in order that the Kelly Company may start immediate operations of the Matzka process." (Title to the machine was to vest in the Kelly Company upon its payment of the balance due the manufacturer. But the complainants were to deliver it forthwith.)

The bill nowhere alleges that the complainants delivered the machine together with complete drawings, plans and specifications, to the Kelly Company. If the Kelly Company's admitted failure to exploit the process is due to the want of the specially designed machinery and knowledge of its drawings, plans and specifications from

which it could procure the construction of other such machines as the contract contemplates, certainly the complainants cannot lay hold of the Kelly Company's failure, which their own act occasioned, as a justification for coming into a court of equity and asking that the Kelly Company be ousted, so to speak, from enjoyment of its rights under the contract.

Until the complainants allege that they have performed the important obligations just referred to as imposed upon them by the contract, or allege facts which constitute a valid excuse for non-performance, I am of the opinion that the defendants should not be required to answer the bill.

It is true that the complainants allege that the defendants have abandoned the contract. But the bill specifies the facts evidencing the abandonment, and those specifications of fact turn out to consist of non-performance, which it appears to me is not culpable if the machine, its drawings, plans and specifications were not delivered as guaranteed by the complainants.

The demurrer will be sustained for the reason stated in support of the last ground of demurrer.

Order accordingly.