**PERMA RESEARCH & DEVELOPMENT COMPANY, Plaintiff,**

v.

**The SINGER COMPANY, Defendant.**

**No. 66 Civ. 665.**

United States District Court,
S. D. New York.

Jan. 27, 1970.

---

Poletti, Freidin, Prashker, Feldman &
Gartner, New York City, for plaintiff;

Paul R. Grand, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant; William C. Chanler and James T. Boorsch, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

This is a motion by defendant, The Singer Company ("Singer"), for summary judgment dismissing the complaint, pursuant to Rule 56, Fed.R.Civ.P. Plaintiff, Perma Research & Development Company ("Perma"), contends that the motion should be denied both because of the doctrine of "law of the case" and because there are many issues of material fact in dispute.

The complaint, far from a model of clarity, asserts three claims. The first seeks damages of $41,000,000 for breach of a June 1964 contract between the parties, alleging that substantial numbers of an automobile anti-skid braking device invented by Frank A. Perrino, the president of Perma, and assembled by Singer under the contract were "defective as a result of inadequate quality control." The second seeks to set aside a superseding contract made in December 1964 and to recover damages of $41,000,000 for fraud in the inducement. Both of these counts were dismissed by this court (Bryan, J.) and summary judgment granted in favor of Singer. The Court of Appeals affirmed. 410 F. 2d 572 (2d Cir.1969).

We are concerned here with the third claim, which is buried in the "WHEREFORE" clause of the complaint under the prayer for other relief. It alleges in the alternative that "if it be determined that the contract of December 21, 1964 be valid, Plaintiff demands judgment upon this contract for breach and nonperformance thereunder in the amount of 41 million dollars."

There was extensive discovery, but neither party sought evidence concerning this alternative claim. Rather, it was either overlooked or intentionally ignored. Not surprisingly, therefore, on the earlier motion for summary judgment, Singer did not address itself directly to the alternative claim, nor did Perma. Despite this, it did not escape the notice of Judge Bryan, who, after noting the neglect of the parties, held that "in the present posture of this action and on the papers before me Singer has not demonstrated that there are no material issues of fact as to this claim which require trial and summary judgment on the claim must therefore be denied."

Had the matter stopped there, we would not feel constrained to follow Judge Bryan, for it is plain that because of the parties' neglect the court lacked sufficient information in proper form to consider the merits of the alternative claim and in such circumstances the doctrine of law of the case is not a strait jacket.[1] However, the matter did not stop there. Instead, Singer moved successfully for reargument asserting that "this claim of breach must be dismissed because as a matter of law the contract provided the exclusive remedy of termination for any alleged inadequacy of performance (Point I), or, alternatively, because on the basis of undisputed facts now before the Court, there has been no breach (Point II)."

Singer then made the precise argument, cited the same authorities and presented the identical facts now urged on this second attempt for summary judgment in its favor. There is no suggestion that there are any newly discovered facts or that there has been a change in the applicable law. In short, the very points now made were all made and rejected by this court when Judge Bryan granted reargument and adhered to his original decision. This squarely

1. Johnson v. Cadillac Motor Car Co., 261 F. 878, 882–883, 8 A.L.R. 1023 (2d Cir. 1919); Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944, 952–953 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

raises the question of whether this motion is barred by the doctrine of law of the case.

As Judge Learned Hand said, "the 'law of the case' does not readily bind a court to its former decisions, but is only addressed to its good sense."[2] Since the doctrine is addressed to the court's "good sense," it ought not be imposed on a mechanical basis.[3] Rather, its applicability turns upon a number of considerations.[4] One is judicial economy and another is the unseemliness of a court's altering a legal ruling as to the same litigants. A decision in a given case is, therefore, said to be the law of the case, and no question previously decided will be decided again unless there is some compelling reason.[5]

The balance of considerations here argues strongly against overruling Judge Bryan, for, although we are not compelled to follow his decision, in all "good sense" we are unable to find any convincing reason for refusing to do so.[6] We rest on his opinion both because it is the law of the case and because we are satisfied with it.[7]

Singer contends that the alternative claim for breach of the December agreement must be dismissed because as a matter of law Singer was not required under the contract to do anything until January 1966 and because the contract provides the exclusive remedy of termination for any alleged inadequacy of performance. Singer's contentions are based on paragraph 10 of the contract, which, in pertinent part, provides:

"Reversion Right. In the event * * * [Singer] does not incur direct and indirect costs of at least $100,000 for marketing, promoting and advertising the Product ⌄ * * * in any calendar year between January 1, 1966 and the December 31st preceding the time of expiration of * * * [Singer's] duty to pay royalties hereunder * * * [Perma] upon written notice * * * may notify * * * [Singer] of its exercise of its rights * * * [to reversion of its patents, tools, etc.]."

It was further provided that upon receipt of such notice, Singer "shall assign and convey to * * * [Perma] the patents and patent application assigned and conveyed hereunder" in consideration of Perma's payment to Singer of all its debts, plus $50,000 in cash, whereupon the December agreement would terminate.

Relying on the above provision and its tender of the patents and waiver of the $50,000 cash payment, Singer argues that paragraph 10 defines not only the sole measure of the performance required of Singer, but also specifies Perma's exclusive remedy for breach. We think, however, that paragraph 10 simply gives Perma an option to recover its patents and terminate the contract upon specified conditions. The option rests not with Singer but with Perma.

An option to terminate is not an exclusive remedy, and a party is not obligated to exercise such an option but may stand on his rights.[8] There is, thus, no basis in the agreement for Singer's contention that "under any conceivable version of the facts, as a matter of law Perma's sole remedy would be to reacquire its patents." Nor do we find

2. Higgins v. California Prune & Apricot Grower, Inc., 3 F.2d 896, 898 (2d Cir. 1924).

3. United States v. Russell Mfg. Co., 349 F. 2d 13, 19 (2d Cir. 1965).

4. Zdanok v. Glidden Co., Durkee Famous Foods Div., supra, 327 F.2d at 953.

5. Wharton v. Hirsch, 348 F.2d 906, 907 (2d Cir. 1965).

6. Banco Nacional de Cuba v. Farr, 383 F.2d 166, 183 (2d Cir. 1967).

7. See, United States v. Certain Property, etc., 344 F.2d 142, 144 (2d Cir. 1965).

8. Patents, 43 N.Y. Jurisprudence § 47; Bernard v. Golden Gate Mfg. Co., 187 App.Div. 542, 175 N.Y.S. 741, 744 (1st Dep't 1919), aff'd, 231 N.Y. 591, 132 N.E. 900 (1921).

support in the cases urged by Singer[9] for all of them, as Singer concedes, are predicated on the fact that patents were assigned without an express agreement by the assignee to pay any specified amount or to perform any particular act. That premise is absent here. It is not supplied by reiteration of the complaint's erroneous conclusion that the contract is illusory because Singer "was not bound to perform any covenants or agreements." That construction of the agreement is frivolous, and it was expressly and correctly rejected by both Judge Bryan and the Court of Appeals.

■ Nor is the premise found in paragraph 13 of the contract, which, under the heading "Marketing," states that the "Buyer in its absolute discretion shall determine the method of manufacturing, exploiting and marketing the Product." We think it perfectly plain that paragraph 13 merely specifies that control of the means and methods of performance rests in Singer's discretion. The clause cannot be stretched to give Singer an absolute right unilaterally to abandon the contract or to terminate it at will.

Nor do we find merit in Singer's contention that as a matter of law Perma is limited to a claim for rescission. The *Neenan, Crowe* and *Matzka* cases[10] each involved suits by a licensor seeking not damages but rescission. None holds that the plaintiff may not recover damages but simply ground equity jurisdiction on the proposition that the legal remedy was inadequate because damages were of a speculative nature. Indeed, the *Crowe* case specifically recognized the right of the plaintiff "first to hold the contract rescinded or second to sue on the breach for damages." Our rejection of these authorities should not be understood as a holding either that the fact of, or the amount of, plaintiff's damages, if any, is certain. It may well be that there are no damages or that, if there are, they are of a speculative nature.[11] We simply hold that that question cannot be determined on the record before us but must await developments at the trial.

■■ Equally without merit is Perma's contention that Singer breached the December agreement by not shipping the product at once and throughout 1965. Perma claims support for this contention in the fact that Singer assumed five contracts previously made by Perma with various distributors which called for delivery of the product either in 1964 or in 1965. It is apparent, however, that the product never was perfected during 1965. Concededly, the parties were engaged in joint efforts to correct the defects at least until the end of July, and the product is still not fail-safe. Perrino admitted on his deposition that a malfunction will lead to a complete loss of braking power even today. Yet, in promotional material shown to Singer before the June agreement, Perma represented that the device had "a fail-safe feature which will automatically revert to the standard braking system in case of failure." Thus, the device was not fail-safe as that term is defined in im-

9. Corbet v. Manhattan Brass Co., 93 App. Div. 217, 87 N.Y.S. 577 (1st Dep't 1904), modified, 183 N.Y. 548, 76 N.E. 1092 (1905) ; Ebert v. Loewenstein, 42 App. Div. 109, 58 N.Y.S. 889 (1st Dep't 1899), aff'd, 167 N.Y. 577, 60 N.E. 1110 (1901) ; Born v. Schrenkeisen, 110 N.Y. 55, 17 N.E. 339 (1888) ; Wing v. Ansonia Clock Co., 102 N.Y. 531, 7 N.E. 621 (1886) ; Rose v. Imbrey, 37 N.Y.S.2d 793 (Sup.Ct., Bronx Co. 1942).

10. Neenan v. Otis Elevator Co., 194 F. 414 (2d Cir. 1912) ; Crowe v. Oscar Barnett Foundry Co., 213 F. 864 (D. N.J.1917) ; Matzka Corp. v. Kelly Dry-Pure Juice Corp., 19 Del.Ch. 359, 168 A. 70 (1933).

11. See Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946) ; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544 (1931) ; Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 378, 47 S.Ct. 400, 71 L.Ed. 684 (1927).

partial dictionaries [12] and by Perma before there was any motive to create an issue of fact. We think that in view of these immutable admissions by plaintiff there can be no genuine issue that the device was not fail-safe when Singer decided to abandon the contract.[13]

It is nothing short of preposterous, in view of the modern doctrine of strict liability,[14] to suggest that Singer was under a duty to ship a product concededly defective. Indeed, Perrino, as a deponent, admitted as much,[15] and as a litigant based his rejected claim for breach of the June contract on Singer's alleged shipment of defective product.

 More significantly, we find no merit in the foregoing contentions of either party because the contract, as construed correctly by Judge Bryan and the Court of Appeals, neither permits Singer to sit idly until 1966 nor requires it to start manufacturing or shipping at once. Rather, it obligates Singer to use its best efforts to manufacture and market the product.[16]

"Best efforts," like "reasonable care," is a term which necessarily takes its meaning from the circumstances. Set against the background of defects in both the quality and design of the product, which the parties had experienced over a six-month period while operating under the June 1964 contract, we think that "best efforts" here means that Singer was required to continue collaborating with Perma for a reasonable length of time in a good faith effort to solve the problems then preventing marketing of the product. Clearly, that is

12. Perma's pre-litigation definition conforms to the one given in the dictionary: "fail-safe (fāl′sāf′), adj. 1. Electronics. pertaining to or noting a mechanism built into a system, as in an early warning system or a nuclear reactor, for insuring safety should the system fail to operate properly. 2. equipped with a secondary system that insures continued operation even if the primary system fails. * * * [adj., n. use of v. phrase fail safe]." Random House Dictionary of the English Language (Unabridged Ed. 1969).

13. Perrino the affiant asserts that whether the device was fail-safe when Singer decided not to market it is the core of the present dispute between Perma and Singer. The assertion, of course, is an argumentative conclusion and we reject it. Perrino attempts, in his affidavit, to extricate himself from his admissions in his deposition by tailoring the definition of "fail-safe" and coloring his testimony with the lame explanation that when he said a malfunction can lead to a loss of brakes - he merely meant that a mechanical product not correctly built may not function and that the loss of brakes does not demonstate an absence of a fail-safe feature. Material issues of fact, however, cannot be created simply by contradictory or "inconsistent statements made by Perrino the deponent and Perrino the affiant." 410 F.2d at 578.

14. Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592 (1963).

15. "Q That's because you wouldn't ship 500 replacement units or wouldn't permit the shipment of 500 replacement units if you believed them to be defective, is that right?
"A That's right. But that doesn't mean that these 500 units may not be part of the units which were shipped over my objection to Mr. Romel that defective units should not be shipped." Deposition of Perrino, p. 190.

16. The complaint alleges in Count II that the December agreement was illusory because Singer was not bound to perform any covenants or agreements and retained complete discretion as to manufacturing and marketing. Urged by Singer, Judge Bryan rejected the contention by reading the Duff-Gordon rule into the agreement and thus found an obligation on defendant's part to use its best efforts to manufacture and market the product.
The Duff-Gordon rule is that "a promise may be lacking, and yet the whole writing may be 'instinct with an obligation' imperfectly expressed." Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 91, 118 N.E. 214 (1917). Under the rule, the implication to use "best efforts" is clearly predicated on the lack of an express promise.
While it is true that the December agreement did contain an express promise of the performance required by Singer after January 1, 1966, it was silent as to what Singer was supposed to do from December 1964 until then. We, therefore, think that Judge Bryan was correct in filling the void with an implied promise.

what the parties intended, for that is what they started doing immediately. Singer spent substantial time and money and the parties engaged in joint efforts for over six months to solve the problems. Their intention to keep trying is also revealed in the fact that simultaneously with the December contract, they entered into an agreement whereby Perma undertook to furnish know-how and technical assistance to Singer for the next six months in consideration of Singer's payment of $9,800 per month. The intention is further manifested in the main agreement's postponement of Singer's obligation to spend money on marketing and promotion until January 1, 1966. That, we think, shows an understanding that further experimental work would be necessary to perfect the product before Singer could be expected to put it on the market.

Singer's obligation to continue making the collaborative effort to correct the defects arose immediately upon entering into the December agreement. The obligation, however, was not perpetual. Rather, we think, since no time was stated for performance, Singer was obliged to keep trying for a reasonable length of time.[17]

Our construction of the contract is consistent with Judge Bryan's and compels us to reject Singer's contentions that its only duty was to market and promote the product after January 1, 1966, as specified in paragraph 10 of the contract, and that Perma's sole remedy for an inadequate performance both under the contract and as a matter of law was to terminate the agreement and recover its patents.

We conclude, therefore, that Judge Bryan was correct in rejecting Singer's contention that on any conceivable state of facts Singer is entitled to judgment dismissing the alternative claim as a matter of law.

We turn, then, to whether there are any genuine issues of fact requiring trial. The factual issue, if any, posed by the contract as construed by the court, is whether Singer did use its best efforts for a reasonable length of time in collaboration with Perma to perfect the product in order to be in a position to market it.

There is no question that Singer did spend considerable time and money in an effort to perfect the product. Indeed, the Court of Appeals noted "there was substantial performance under the December contract, at least until Singer concluded that the product was not 'fail-safe' and hence unmarketable. * * * Perrino admitted in his deposition that the parties were engaged in joint efforts to solve the 'fail-safe' problem as late as six months after the December contract was negotiated." 410 F.2d at 576–577.

The issue, however, is not whether there was substantial performance, as Singer contends, or whether the product was "fail-safe," as Perma contends, but whether, as Judge Bryan stated, Singer's performance was adequate. For example: (1) Did Singer use its best efforts for a reasonable time in collaboration with Perma to perfect the product under all of the circumstances? (2) In view of the fact that the device was not "fail-safe," was Singer justified in abandoning the contract either because it was impossible to make the device "fail-safe" or because it could not be made "fail-safe" without unreasonable, unwarranted or impractical efforts and expenditures of time and money out of all proportion to engineering and economic realities?

Such questions could not be answered definitively on the basis of the record before Judge Bryan, nor can we answer them on the refurbished record before us.

In the first place, the voluminous depositions were directed not to breach or performance of the December agreement but to breach or performance of the June contract, to fraud or the lack of it as to the December agreement, and to

---

17. 1 Williston, Contracts § 38, pp. 112–113 (3d ed. 1957).

Singer's counterclaim for fraud. This is understandable because no one paid any attention to the alternative claim for breach of the December agreement and, even if the claim had been noticed, there was no suggestion at that time of an implicit promise by Singer to use its best efforts. That promise did not come into the case until Judge Bryan's decision long after the depositions were closed. As a result, only a few of the thousands of questions asked have any relevance whatever to the issues now before the court.

In the second place, Singer's papers on this motion are directed not to a demonstration of the absence of a genuine factual issue respecting its use of its best efforts but to the rejected proposition that the claim is moot as a matter of law because Singer had a right to terminate the contract upon tendering the patents to Perma. Likewise, Perma's papers are not addressed to the issue. Rather, they contain a mass of irrelevancies, arguments, opinions and conclusions. The burden, however, of demonstrating the absence of any genuine issue of fact is upon Singer, and it has failed to do so.

 Finally, a motion for summary judgment is always addressed to the discretion of the court.[18]

The device which is the subject matter of this litigation has over 100 separate parts and is an extremely complicated mechanism. Much of the voluminous depositions is involved with engineering technicalities, and, as we have seen, there is little in the depositions of relevance to the present issue. The affidavits, exhibits and memoranda are extensive. The sheer quantity of the material to be analyzed cautions against the expenditure of judicial time in an effort to sift out and piece together the undisputed facts essential to a summary judgment. The issues are further obscured by argumentative statements and counter-assertions, conclusions and conflicting inferences which the parties attempt to draw from an incomplete record. Too much is left open.

Plainly, there is a genuine issue as to whether Singer, in collaboration with Perma, did use its best efforts for a reasonable length of time to correct the defects in order to make the product marketable.[19] When we add the fact that summary judgment has already been once denied, it is readily apparent that on the record here summary judgment would rest on quicksand. The cumulative weight of the obstacles is too heavy for so frail a vehicle as summary judgment.[20]

We are convinced under the circumstances that sound judicial administration dictates that the court withhold judgment on the involved questions of law and fact presented here until the whole structure stands on a solid foundation established on a trial where the evidence can be directed to the relevant issue, the proof more deeply developed, the ultimate facts definitively found and the issues put into clear focus. Summary procedures, however salutary, where issues are clear-cut and simple present a treacherous record for deciding complex litigation. Good judicial administration demands that judgment of the ultimate questions involved in this case be withheld until there is a solid basis for findings by a court or jury based on litigation or a comprehensive statement of agreed facts.[21]

Accordingly, the motion for summary judgment is denied.

So ordered.

---

18. Rockefeller Center Luncheon Club v. Johnson, 116 F.Supp. 437 (S.D.N.Y. 1953) ; 6 Moore, Federal Practice ¶ 56.-15 [6], at 2421 (2d ed. 1966).

19. There may be other issues of fact, and we do not wish to foreclose the parties or the pre-trial or trial judge in that regard.

20. Boston & M. R.R. v. Lehigh & N. E. R.R., 188 F.Supp. 486, 491 (S.D.N.Y. 1960), appeals dismissed per curiam, 287 F.2d 678 (2d Cir. 1961).

21. Kennedy v. Silas Mason Co., 334 U.S. 249, 256–257, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948).