MONROE MEYERSON et al., as Trustees of CENTRAL RIGGING & CONTRACTING CORP. OF CONNECTICUT, INC., Respondents, *v.* LAWYERS TITLE INSURANCE CORPORATION, Appellant, et al., Defendants.

First Department, June 6, 1972.

*David Kashman* of counsel (*Patrick J. Hughes,* attorney), for appellant.

*Harold Greenberg* of counsel (*Lorance Hockert* with him on the brief; *Glass & Greenberg,* attorneys), for respondents.

CAPOZZOLI, J. The relationship of Rosen, who was represented by the appellant as an "Approved Attorney", and the appellant, existed for many years, covering a period since 1955. He had been preparing title reports for the appellant and certifying them for the purpose of issuing title policies since that time. Between 1965 and 1966 he had prepared over 75 of such reports and actually closed those titles on behalf of the appellant.

The appellant furnished Rosen with blank forms, on which these reports of the title searches were set forth in detail. At the top of the form there was printed:

"LAWYERS TITLE INSURANCE CORPORATION HOME OFFICE — RICHMOND, VIRGINIA REPORT ON TITLE".

In all fairness, nobody who received this report, unless he were otherwise warned, would have any reason to doubt that he was

dealing with the appellant, through a representative. Accordingly, in his efforts to secure the report of the title search, the plaintiffs' attorney, Friedman, testified that he telephoned the appellant and inquired about the report and he was referred to Rosen for same. Surely, if the appellant did not regard Rosen as authorized to act for it, then was not that the time to disclaim knowledge of the transaction and the responsibility for same? It must be remembered that the transaction was given a number by the appellant, earlier in the negotiations, and it was with reference to this numbered transaction that Friedman inquired of the appellant as to the whereabouts of the title report. If there was no relationship between the appellant and Rosen, which would entitle the latter to act as agent for the former, then why would they have referred Friedman to Rosen?

Not only did the appellant give to Rosen its own official blank forms on which to enter the result of the title search, but also furnished him with a " Manual " listing the rates charged by appellant for a title search and insurance. At the closings Rosen was authorized to collect the fees from the clients, as listed in the " Manual ", on behalf of the appellant. Thereafter he accounted to the appellant for the moneys collected and, at the same time, certified the correctness of the title search to the appellant, upon the strength of which the appellant would issue the title policy, out of its office, in the name of the client. At page 195 of the record the title officer of the appellant, James P. Farrell, called as a witness by the appellant, testified as follows:

" Q. Do these people have the right to hold themselves out to the public as Approved Attorneys of Lawyers Title?

A. Yes. They advertise in Martindales and other places."

If the appellant did not regard Rosen as its duly authorized agent to represent it with clients, then it would have been a relatively simple matter for the appellant to print a warning on the title report to the effect that any transaction of business with Rosen did not bind the appellant. But the report is silent as to this and a reasonable person would be warranted in believing that he was dealing with the appellant, and the trial court so found.

The reliance by the defendant on *Mandor* v. *Lawyers Tit. Ins. Corp.* (28 N Y 2d 739) is misplaced, as that case is readily distinguishable from the case at bar. The *Mandor* case was concerned with a complaint based on an alleged title insurance policy issued by the defendant. The court found that no evi-

dence of a title insurance policy was produced and, in fact, that no title insurance policy had ever been issued. Therefore, the plaintiff had no cause of action. That case does not concern itself in any way with the status of Rosen vis-à-vis the appellant and it cannot be cited as authority for the proposition that Rosen is not an authorized agent in the case before us. This action is based upon the submission of a false title report to the plaintiffs by appellant's agent, resulting in damages to plaintiffs. It is not based upon a title policy, as was *Mandor*. It is also noteworthy that the Court of Appeals, in the *Mandor* case, noted that Rosen, to whom it referred as defendant's "Approved Attorney", did not testify at all. This is not so in our case. There is extensive testimony by Rosen, in which he gives details of his relations with the appellant and from which one can easily conclude that he was an authorized agent of the appellant.

At pages 64 to 65 of the trial record Rosen testified as follows:

"Q. What is an Approved Attorney?

A. An Approved Attorney is approved by the Lawyers Title Insurance Corporation. The Approved Attorney is authorized to examine titles, to close the titles, and to send the report to the title company and the title company issues the policy as a result of the examination and closing of title.

The Court: In other words, you make the examination?

The Witness: Yes.

The Court: And make out an abstract?.

The Witness: That is right.

The Court: You handle the closing?

The Witness: Yes.

The Court: Do you send a report in?

The Witness: Yes.

The Court: That is, on the closing?

The Witness: Yes.

The Court: And then they issue the policy?

The Witness: The title policy."

Further, at page 66:

"Q. Directing your attention specifically to the period of November-December 1966, how did clients or persons who wished to insure with Lawyers Title reach you?

A. They could reach me at my office."

Later in the record, in referring to the number which appears in the upper right hand corner of the reports involved in this case, the following appears at pages 74 to 75:

"Q. I direct your attention to the upper right-hand corner of this exhibit and ask you what this number 124, 154 represents?

A. This number represents the number furnished to me by Lawyers Title Insurance Corporation."

Rosen was performing within the scope of his authority when he acted in the fraudulent manner in which he did, to the plaintiffs' damage.

As to the observation in the dissent that the witness, Friedman, testified that he was under the impression that the report was a title insurance policy, it is important to refer to the actual testimony of this witness on this point.

At pages 160 to 161 of the record we find the following:

"Q. You thought this was a title policy?

A. No, I thought it was a certification which was conclusive, based on the number that was issued by the title policy company.

Q. Based upon the title number?

A. Based on the number and the report and the fact that a phone call was made from the closing to the Lawyers Title Insurance Corporation and the fact that all that needed, remained to be done was a clerk typing up the actual policy and mailing it to me. As far as I was concerned, this was the document that I relied upon."

In addition to the above we would also apply to this case the legal maxim that: "where one of two innocent parties must sustain a loss from the fraud of a third, such loss shall fall upon the one * * * whose act has enabled such fraud to be committed." (*Moore* v. *Metropolitan Nat. Bank,* 55 N. Y. 41, 47.)

The cause of action in the complaint, which is based upon an alleged conspiracy on the part of all of the defendants to make false and fraudulent representations, should be dismissed. There is no substantive tort of conspiracy as pleaded therein. (*Goldstein* v. *Siegel,* 19 A D 2d 489, 493.) Moreover, said cause of action is merely duplicative of the fraud cause of action discussed above.

The judgment appealed from should be modified on the law to the extent of dismissing the cause of action in the complaint which is denominated as the second cause of action against all defendants and otherwise affirmed, with costs to respondents.

STEUER, J. (dissenting). I am in accord with the determination to dismiss the second cause of action but I believe, contrary to the majority, that the first cause of action should also be dismissed. Unfortunately no basis for this determination can be given without a somewhat extended review of the facts.

645 East Tremont Corporation owned a property located at that address in Bronx County. One of the principal stockholders, and acting for it in this transaction, was Howard E. Spier. Spier proposed to plaintiffs, who were in the market for a high return investment, to give a second mortgage on the property for a loan of $35,000. The mortgage was to be for $37,100 and carry interest at 1% per month, the borrower to pay all fees and expenses of the closing. Plaintiffs referred the offer to the attorney for the organization for which they were acting, Bernard Friedman, Esq. Mr. Friedman, after a preliminary examination into the legality of the investment, contacted Mr. Spier. The latter told him that one Jacob Rosen had prepared a title report on the property for the defendant, Lawyers Title Insurance Corporation, in connection with a prior negotiation for a second mortgage loan, which negotiation had failed to materialize. Mr. Friedman sought to get a copy of this report from defendant and he was referred to Mr. Rosen, who promised to give him a copy but never did.

At the closing on December 30, 1966, Rosen was present and produced a title report which he had prepared for the instant transaction. This report was either fraudulent or inaccurate. It represented the taxes as paid when they were not, and it failed to disclose a prior existing second mortgage. Rosen seeks to justify these discrepancies by his claim that Spier told him the taxes would shortly be paid and that the prior second mortgage was to be satisfied with the proceeds of the instant transaction. Concededly, however, none of this was disclosed at the closing.

The title report is on a blank form supplied by defendant to Rosen. The report bears a number filled in by Rosen which is the same number that appears on the report he prepared for the abortive transaction which had failed to materialize. Friedman further testified that Rosen telephoned defendant at the closing, reporting the transaction had closed and giving the number. This testimony appears incredible and the trial court found that Rosen did not report the transaction to defendant at that or any other time.

In addition to the narration of this transaction, one further fact must be considered. Defendant maintains a list of attorneys whom it designates as "Approved Attorneys". These attorneys are not agents or employees of defendant. They are attorneys whose title reports, if submitted to defendant with their certification of accuracy, are accepted as to the facts in the reports without further investigation; and if the facts warrant, the defendant issues an interim binder of title insurance.

The arrangement is purely between the defendant and the respective attorneys and constitutes a convenience to them and their clients, obviously to induce them to insure with defendant.

There was a default on the first mortgage. Upon foreclosure the surplus was not sufficient to satisfy the prior second mortgage and plaintiffs lost their entire investment.

It is not quite clear what plaintiffs' theory of recovery is. According to the complaint liability is based on representations made by defendant that the property was as represented in Rosen's title report. However, on the trial Friedman, who was the main witness for the plaintiffs, testified that he was under the impression that the report was a title insurance policy and that he acted for the plaintiffs in allowing the closing on that assumption. It is difficult to see how, if he had so much as looked at the document, he could have believed that it constituted a policy. There is no representation testified to that it was a policy, nor that application had been made for a policy or the premium had been fixed or paid. The situation exactly parallels that in *Mandor* v. *Lawyers Tit. Ins. Corp.* (28 N Y 2d 739), in which the same borrower also had Rosen show a title report with the same deficiencies to another lender on a different property. The court held there was no insurance. It is sought, however, to distinguish that holding on the ground that here there were representations.

Apart from the fact that defendant styled Rosen an " Approved Attorney " and supplied him with forms, there was no representation at all. Clearly the mere fact that the defendant was willing to accept Rosen's findings on a title search on specified conditions is not a representation that anything Rosen might put in such a paper was factually correct. Actually all that defendant agreed with Rosen to do was that if he submitted a report with his certification defendant would issue an interim binder. Neither Rosen nor anyone else ever submitted the report to defendant. There is just nothing in the record upon which a representation can be based. While Rosen had received many binders from defendant on reports that he had made, as was pointed out in the *Mandor* case (*supra,* p. 741) these cannot be used as a basis for a finding in an instance where no binder was issued.

STEVENS, P. J., McGIVERN and MARKEWICH, JJ., concur with CAPOZZOLI, J.; STEUER, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on April 19, 1971, modified, on the law to the extent of dismissing

the cause of action in the complaint which is denominated as the second cause of action against all defendants, and otherwise affirmed. Respondents shall recover of appellant $50 costs and disbursements of this appeal.