**POLYGLYCOAT CORPORATION, Polyglycoat Rustproofing Corp., Polyglycoat Textile Sealant Corp., and Celestial Chemicals Ltd., Plaintiffs,**

v.

**C. P. C. DISTRIBUTORS, INC., Carecraft Industries, Ltd., Tom Beckett and Fred Weisman, Defendants.**

**C. P. C. DISTRIBUTORS, INC., Carecraft Industries, Ltd., E. Thomas Beckett and Frederick R. Weisman, Cross-Plaintiffs,**

v.

**Walter FIVESON, Gloria Fiveson, Execu-selling Corp., Polyglycoat Corporation, Polyglycoat Rustproofing Corp., Polyglycoat Textile Sealant Corp., Celestial Chemicals Ltd., and Automotive Customer Service Protection Plan, Inc., Cross-Defendants.**

No. 80 Civ. 5924 (KTD).

United States District Court,
S. D. New York.

Jan. 21, 1982.

Daniel Rosen, New York City, for plaintiffs.

Forster & Kadish, New York City, for defendants; Gerald Kadish, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendants have moved for summary judgment in this diversity case sounding in breach of contract. Plaintiffs Polyglycoat Corporation ["Poly"], Polyglycoat Rustproofing Corporation ["Poly Rust"], Poly-

glycoat Textile Sealant Corporation ["Poly Textile"], and Celestial Chemicals ["Celestial"] are wholly owned sister corporations incorporated in New York. In 1977, plaintiff Poly entered into a series of agreements with defendant C.P.C. Distributors, Inc. ["CPC"], whereby CPC was to be the exclusive distributor of Polyglycoat Automotive Products and Polyglycoat Marine & Aeronautical Products in the states of California, Oregon, Washington, Hawaii, Pennsylvania and the counties of Atlantic, Burlington, Camden, May, Cumberland and Glouster in New Jersey.

Plaintiffs claim that through verbal agreements, CPC also agreed to distribute products manufactured by Poly Rust, Poly Textile and Celestial under the conditions and requirements set forth in the 1977 agreements between CPC and Poly. The minimum purchase requirement was not included in the verbal contracts.

Plaintiffs' complaint sets forth eight counts. Plaintiffs allege that CPC breached minimum purchase requirements of the contracts, and anticipatorily breached the "best efforts" term of the contracts by planning to distribute a competitive line of products produced by its parent corporation, defendant Carecraft Industries, Ltd. ["Carecraft"]. In connection with the alleged anticipatory breach, plaintiffs assert that CPC and its president, defendant Tom Beckett, made false warranties, representations and statements as to CPC's marketing plans to induce plaintiffs revelation of future marketing plans and other classified trade secrets. Further, plaintiffs claim that defendants CPC, Tom Beckett, the President of CPC, Carecraft and Fred Weisman[1] acted in concert to anticipatorily breach the "best efforts" provisions of the contract. Carecraft and Fred Weisman are also alleged to have induced defendant CPC to anticipatorily breach the contracts.

Plaintiffs claim damages for the alleged breaches of contract and for defendants' alleged tortious acts as well as damages for monies allegedly expended by the plaintiffs for advertising and promotion of the products in reliance upon the contracts. Plaintiffs also request punitive damages with respect to CPC and Tom Beckett's alleged fraud. In addition, plaintiffs claim that Poly Rust, Poly Textile and Celestial were third party beneficiaries to the agreements and as such suffered damages for the defendants' breach of the agreements.

Defendants deny allegations of breach and anticipatory breach of contract and further deny making any false statements to the plaintiffs. . In addition to defendants' cross claims and counter claims, defendants move for summary judgment and dismissal of plaintiffs' complaint.

■ Defendants' motion for summary judgment is granted with respect to plaintiffs' first count alleging breach of minimum purchase requirements. Plainly read, the minimum purchase requirement contained in the agreements is merely a condition upon which distributors are granted their particular territory.[2] If CPC, in fact, did not meet these requirements, Poly was then entitled to grant the territories to others. I reject plaintiffs' argument that failure to comply with this clause constitutes breach of contract. Accordingly, Count I is dismissed and Count III alleging damages for monies spent on advertising due to defendants' breach in Count I must also be dismissed.

■ Plaintiffs' third party beneficiary claim, Count II of the complaint, must also be dismissed. The 1977 written agreements between Poly and CPC do not express any intention to benefit Poly Rust, Poly Textile

---

1. Mr. Weisman is the sole director of both CPC and Carecraft and is the chief executive officer of Carecraft and of Frederick Weisman Co., the parent of Carecraft. He is also the majority stockholder of Frederick Weisman Company.

2. Clause 2 of the agreement states
   "The territory of the DISTRIBUTOR shall be that area . . . *so long as* the DISTRIBUTOR purchases from POLY and makes payment to POLY . . . an initial order . . . and thereafter a minimum order .. . ."
   (emphasis added).

and Celestial. Indeed, plaintiffs have admitted that Poly Rust, Poly Textile and Celestial were not formed at the time of the 1977 agreements. They are instead alleged to be parties to separate oral agreements entered into at a later date with CPC. Absent a showing of intent in the 1977 agreements to benefit these plaintiffs, Poly Rust, Poly Textile and Celestial do not have a claim under the written agreements. *Cerullo v. Aetna Casualty & Surety Co.*, 41 A.D.2d 1, 341 N.Y.S.2d 767 (1973).

■ Count IV of the complaint, alleging anticipatory breach, on the other hand, raises material issues of fact. Defendants correctly maintain that in the absence of a specific negative covenant not to compete, an exclusive distributor's decision to market a competing brand is not a *per se* violation of "best efforts." *Parev Products Co., Inc. v. I. Rokeach & Sons*, 124 F.2d 147 (2d Cir. 1941). "Best efforts" is a term "which necessarily takes its meaning from the circumstances." *Bloor v. Falstaff Brewing Corporation*, 454 F.Supp. 258, 266 (S.D.N.Y.1978), *aff'd*, 601 F.2d 609 (2d Cir. 1979); *Perma Research & Development Co. v. Singer Co.*, 308 F.Supp. 743, 748 (S.D.N.Y.1970).

■ CPC's distribution of the competitive line of automotive, marine and aeronautical care products manufactured by its parent corporation, Carecraft, will allegedly result in Carecraft earning profits as both a manufacturer and distributor. This situation could "naturally result in his [CPC's] giving preference to his own brand in the competition for shelf space, rather than aggressively marketing" plaintiffs' products in violation of the "best efforts" clause. *Bloor v. Falstaff Brewing Corp., supra*, at 268. In addition, plaintiffs allege that CPC (i) made efforts to sell the Carecraft line of products to established customers of plaintiffs' products, (ii) planned to use advertising methods developed by the plaintiffs to sell these products and (iii) misrepresented such plans to the plaintiffs. These facts present material facts which could poten-

tially support a finding that defendants violated the "best efforts" provision of the agreement. *Van Volkenburgh, N & N, Inc. v. Hayden P. Co.*, 30 N.Y.2d 34, 330 N.Y. S.2d 329, 281 N.E.2d 142, *cert. denied*, 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972).

Plaintiffs further allege that after CPC had repeatedly denied that it was intending to distribute its own competing brand, it sent a mailgram to Poly retracting its denial and confirming plaintiffs' suspicions. Another mailgram was allegedly sent to dealers who were carrying plaintiffs' products announcing CPC's plans to distribute the competitive line of products.

■ Plaintiffs have alleged sufficient "overt communications" of intent to carry out such plans to support a finding that the announcements of CPC's intentions were positive and unequivocal. *Tenavision, Inc. v. Neuman*, 45 N.Y.2d 145, 408 N.Y.S.2d 36, 379 N.E.2d 1166 (1978). If CPC's alleged plans to market and distribute its parent company's competitive line of products violates its "best efforts" obligations, plaintiffs may seek damages for anticipatory breach due to CPC's maintenance of an "untenable construction of (the) contract(s) on a matter of essential substance," *Hampton v. District Council 37 Health & Soc. Plan*, 97 Misc.2d 324, 327, 411 N.Y.S.2d 124, 127 (1978). Thus, plaintiffs' claim of anticipatory breach presents material issues of fact and defendants' motion for summary judgment of Count IV is denied.[3]

■ Plaintiffs' fifth count charges CPC and its president Tom Beckett, with making false warranties, representations and statements to the plaintiffs as to CPC's marketing plans. This count presents triable material issues of fact and cannot properly be disposed of by motion for summary judgment. "A contracting party may be charged with a separate tort liability arising from, or in addition to, the breach of contract." *North Shore Bottling Co. v. C. Schmidt and Sons, Inc.*, 22 N.Y.2d 171, 179,

**3.** Plaintiffs request compensation for sums spent advertising their products in reliance upon the contracts. Should anticipatory breach be found, they would be entitled to any such proven damages.

292 N.Y.S.2d 86, 92, 239 N.E.2d 189, 195 (1968), *Bernstein v. Polo Fashions, Inc.*, 55 A.D.2d 530, 531, 389 N.Y.S.2d 368, 370 (1976). Further, the count is sustainable as to Tom Beckett in that it alleges that Mr. Beckett "actually participated in the scheme and knowingly and personally made false representations." *Bernstein v. Polo Fashions, Inc., supra.* A corporate officer who participates in a tort, regardless of whether it is in the course of his duties may ordinarily be held individually responsible. *Bailey v. Baker's Air Force Gas Corp.*, 50 A.D.2d 129, 376 N.Y.S.2d 212 (1975), *La Lumia v. Schwartz*, 23 A.D.2d 668, 257 N.Y. S.2d 348 (1965). Plaintiffs' allegations defeat defendants' motion for summary judgment as to Count V. Similarly, plaintiffs' sixth count, seeking punitive damages for the tort alleged in Count V must be sustained.

It is unclear whether plaintiffs' seventh count alleges that defendants conspired to anticipatorily breach the "best efforts" requirements of the contracts or whether it alleges that defendants conspired to defraud the plaintiff.[4]

■ Regardless of which conspiracy is alleged, the count must be dismissed as to defendants Tom Beckett and CPC. There is no substantive tort of conspiracy. Both causes of actions are merely duplicative of the actions against Beckett and CPC for either anticipatory breach of the contracts, *North Shore Bottling Co., Inc. v. C. Schmidt & Sons, Inc., supra, Bereswill v. Yablow*, 6 N.Y.2d 301, 189 N.Y.S.2d 661, 160 N.E.2d 531 (1959);[5] or for fraud. *Meyerson v.*

*Lawyers Title Ins. Corp.*, 39 A.D.2d 190, 333 N.Y.S.2d 33, 37, *aff'd*, 33 N.Y.2d 704, 349 N.Y.S.2d 675, 304 N.E.2d 371 (1972).

■ Defendants Carecraft and Fred Weissman are not parties to the contract. Therefore, they cannot be liable for breach of contract or conspiracy to breach the contract. However, an action based on conspiracy to defraud the plaintiffs, which does not require that the defendants are parties to a contract, is maintainable.[6]

Count VII is thus sustainable only as to defendants Carecraft and Fred Weissman if it indeed alleges a conspiracy to deceive and defraud plaintiffs.

■ Count VIII alleges that Carecraft and Fred Weissman, as third parties to the agreements between CPC and plaintiffs, induced CPC to anticipatorily breach its agreements with the plaintiffs. Plaintiffs allege that (i) there was a valid contract; (ii) defendants had knowledge of the contract; (iii) defendants intentionally induced CPC to sell its own line of products in competition with plaintiffs products; and (iv) plaintiffs suffered damages as a result. Thus, the four requirements for a finding of tortious inducement to breach a contract have been alleged. *Optivision, Inc. v. Syracuse Shopping Center*, 472 F.Supp. 665 (N.D.N.Y.1979), and summary judgment is denied on this count.

In sum, defendants' motion for summary judgment is granted as to Counts I, II, and III and denied as to Counts IV, V, VI and VIII. Summary judgment on Count VII is granted in part and denied in part with

---

**4.** Paragraph 43, Count VII of the complaint states that "defendants CPC, Beckett, Weissman and Carecraft, acting in concert and conspiracy with each other ... violating the 'best effort' provisions of the agreements." In contrast, paragraph 45 states "As a result of such conspiracy *to deceive* the plaintiffs ...."

**5.** Tom Beckett, as chief operating officer of CPC cannot be independently charged for breaching or conspiring to breach a contract to which he is not personally a party. *Buckley v. 112 Central Park So.*, 285 App.Div. 331, 136 N.Y.S.2d 233 (1954); *Greyhound Corp. v. Commercial Casualty, Inc.*, 259 App.Div. 317, 19 N.Y.S.2d 239 (1940).

**6.** In their summary judgment motion, defendants claim that CPC and Carecraft are indistinguishable from each other for the purposes of this action in that CPC is wholly owned by Carecraft.

If, however, as is alleged, Frederick Weissman and Carecraft corporations committed tortious actions as a third party to the agreements between plaintiffs and CPC, independent of CPC, they are liable for those actions. *See Dale v. Aetna Indus. Corp.*, 50 A.D.2d 782, 376 N.Y.S.2d 563 (1975).

leave to amend as to defendants Weissman and Carecraft.

SO ORDERED.