MACQUESTEN GENERAL
CONTRACTING, INC.,
Plaintiff,

v.

HCE, INC. and John J. Hildreth,
Defendants.

HCE, Inc. and John J. Hildreth,
Third–Party Plaintiffs,

v.

Palmer Court Associates, L.L.C., Rella Fogliano, Sabino Fogliano and American Motorists Insurance Company, Third–Party Defendants.

No. 99 CIV.8598(VM).

United States District Court,
S.D. New York.

March 22, 2002.

Joseph P. Asselta, Agovino & Asselta, LLP, Mineola, for Macquesten General Contracting, Inc., plaintiffs.

Hall A. Wintner, Hoguet Newman & Regal, LLP, New York, Joseph P. Paranac, Jasinski and Paranac, P.C., Newark, NJ, for HCE, Inc., John Hildreth, defendants.

MARRERO, District Judge.

This proceeding is in the matter of *MacQuesten General Contracting, Inc. v. HCE, Inc., et al.,* Docket No. 99 Civ. 8598. The Court called this conference to issue its ruling on the parties' cross-motions for partial summary judgment. The filing of plaintiff MacQuesten's complaint was followed by the filing of counterclaims and third party practice by defendant HCE. The cross-motions for partial summary judgment pertain to the underlying complaint, the counterclaims and the third-party claims.

At the outset, the Court notes that although the parties have come forward with seemingly complex cross-motions with voluminous submissions, most of the parties contentions merely underscore that there remain contested issues of material fact about which the parties' have widely divergent views. Neither side makes a particularly convincing case to support its version of the events at issue, but at the same time, both parties have marshaled just enough, by way of sworn affidavits and documentary submissions, to raise several triable issues of fact.

The parties in this matter appear to be unable to agree on much of anything; nev-

ertheless, the Court highlights two critical issues, among many, to illustrate the parties' positions on their respective cross-motions. According to HCE, the manner in which MacQuesten made periodic monthly payments under the three sub-contracts involved the use of two supporting documents: HCE's invoices and the "progress payment applications," required by Article 11 of the sub-contract agreements. (Declaration of John J. Hildreth, sworn to June 13, 2001 ("Hildreth Dec."), ¶¶ 8–11.) In a sworn affidavit, the President of HCE, John J. Hildreth, avers that the HCE invoices reflected the true amount of the work completed by HCE to date and that the amount of the progress payment applications merely represented amounts that MacQuesten was able to pay at that time. (*Id.* at ¶ 9.) Hildreth further contends that he agreed with representatives of MacQuesten that the true amount of work completed, as reflected in its invoices, would be paid in full in future installments. (*Id.*) For its part, MacQuesten's Project Manager for the Palmer Court Homes, Alan Goncharoff, submitted his own sworn affidavit asserting that value of the work completed by HCE was reflected in the progress payment applications and not in the HCE invoices. (Reply Affidavit of Alan Goncharoff, sworn to July 13, 2001 ("Goncharoff Reply Aff."), ¶¶ 10, 18.) Furthermore, in his reply affidavit, Goncharoff contends that "I also never advised HCE that MacQuesten would only pay what it could afford. In fact, HCE was repeatedly advised that it would be paid the full value of the work it completed, in accordance with its subcontract agreements." (*Id.* at ¶ 17.)

The parties also disagree on the way in which their contractual relationship effectively ended. MacQuesten claims that HCE simply walked off the job. (Affidavit of Rella Fogliano, sworn to Apr. 25, 2001 ("Fogliano Aff."), ¶ 8.) HCE contends that it was locked out of the project site and prohibited from re-entering. (Hildreth Dec., ¶ 27).

Thus, the Court is faced with a classic case of dueling affidavits that raise hotly contested issues of fact. As the Court noted earlier, neither party presents a factual case so convincing that the Court is compelled endorse it over the other. At the same time, both parties have come forward with sworn testimony and documentary submissions that, at least at this stage of the litigation, raise genuine issues of material fact. As such, the Court finds that most of the claims raised in the cross-motions should be denied, and the parties should be afforded an opportunity to prove their cases at trial.

Nevertheless, the Court is compelled to give fair warning to the parties at this point. In any litigation, it is commonplace for the parties to feel passionately about their respective positions. Oftentimes, the truth lies somewhere between the extremes taken up by litigants. That may be the case here. However, the Court has some concern that should be evident from its recitation of the two factual disputes above. In cases such as this, it may not be possible for both parties to be right, even though they support their positions with sworn affidavits. For example, it defies logic that HCE intentionally failed to return to the Palmer Court Housing Project and simultaneously was locked out of the construction site, with every intention of completing its tasks.

Despite the abundance of factual issues raised in the parties' cross-motions, there are, however, discrete claims which are subject to disposition on summary judgment motions.

### HCE's Motion for Partial Summary Judgment

First, the Court grants HCE's motion for summary judgment on MacQues-

ten's second claim sounding in fraud. The law in this Circuit is well-settled: a party seeking to bring a claim of fraud, in addition to a claim of breach of contract, may do so only if it can: (1) demonstrate a legal duty separate from the duty to perform under the contract; (2) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (3) assert special damages that are caused by the misrepresentation and unrecoverable as contract damages. *See Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir.1996); *see also Ladenburg Thalmann & Co., Inc. v. Imaging Diagnostic Systems, Inc.*, 176 F.Supp.2d 199, 206 (S.D.N.Y.2001).

According to MacQuesten the separately actionable fraud here concerns Hildreth's allegedly fraudulent statements that HCE had paid all of the laborers and vendors working towards the completion of HCE's subcontract. The record reflects, however, that HCE's duties to pay its laborers and vendors and to affirm its payment of those parties are firmly rooted in Articles 4.1.6 and 11.2 of the subcontract agreement. Therefore, the Court fails to see how these duties arise apart from the underlying obligations in the operative agreement. Furthermore, any representations made by HCE in this regard cannot be extraneous to the contract; the representations squarely addressed contractual obligations. Finally, damages for these alleged misrepresentations may be recoverable, if proven, through MacQuesten's breach of contract claim. For these reasons, HCE's motion for partial summary judgment on MacQuesten's second claim is granted.

### MacQuesten's Motion for Partial Summary Judgment

MacQuesten moves to dismiss HCE's counterclaims for breach of contract, lien enforcement, conversion and interference with HCE's economic and business relations. MacQuesten's motions are denied in substantial part and granted in limited respects.

The Court agrees with MacQuesten in that Rella and Sabino Fogliano are not parties to any agreements between the corporate litigants. As the court noted in *Polyglycoat Corp. v. C.P.C. Distributors, Inc.*, 534 F.Supp. 200, 204 n. 5 (S.D.N.Y. 1982) (citations omitted), an officer "cannot be independently charged for breaching or conspiring to breach a contract to which he is not personally a party." That same principle applies here. As officer and consultant of HCE, respectively, Rella and Sabino Fogliano are not parties to the operative sub-contracts and, therefore, are not individually liable for breach of contract. Thus, HCE's second and third counterclaims, as they pertain to the Foglianos, are dismissed.

The balance of MacQuesten's motion for partial summary judgment on HCE's counterclaims is denied. As the Court noted in its opening remarks, genuine issues of material fact preclude disposition of most of the claims in this case.

MacQuesten contends that all of HCE's breach of contract and lien enforcement claims fail for four reasons: (1) HCE executed waivers as part of its submission of progress payment applications which bar any claim of breach of contract or lien enforcement; (2) any additional recovery by HCE under the sub-contracts is unwarranted because it defaulted on payments to vendors and laborers, thereby entitling MacQuesten to terminate the sub-contracts; (3) HCE has failed to prove any damages, particularly in light of faulty analyses employed by its expert witnesses; and (4) HCE is not entitled to any delay damages in this case because it has waived any claim for such damages pursuant to Article 5.3.1 of the sub-con-

tract agreements. Each of these issues presents material issues of fact which preclude summary judgment at this stage of the litigation.

As to the first argument, the Court agrees with MacQuesten that HCE signed and executed partial waivers of lien each time that HCE submitted a progress payment application. That is not to say, however, that the partial waivers are completely free of ambiguity. Under New York law, a clear and unambiguous waiver will be given full force and effect. *See Thailer v. LaRocca*, 174 A.D.2d 731, 571 N.Y.S.2d 569, 571 (2d Dep't 1991). The ambiguity arises from two sources: first, Hildreth, in his sworn testimony, emphatically asserts that the parties understood the waivers in the progress payment applications to be receipts of partial payments, with full payment on the invoices due at a later date; second, Hildreth's contention is supported in part by the practices of the parties as evident in some of the progress payment applications themselves—that is, several applications, in fact, indicate that MacQuesten made only partial payments on past due amounts that were credited in the next month, with subsequent payment applications reflecting some aggregate value of work performed to date. (Hildreth Dec., ¶ 9.) Thus, a factual issue arises as to whether the parties did in fact implement a system of partial payment for work performed and as to the nature and function of the partial waivers.

The Court's discussion should not be mistaken for the proposition that the partial waivers are null and void. HCE clearly executed some sort of release. But the Court cannot resolve the factual disputes surrounding the interpretation of the partial waivers without giving HCE an opportunity to prove its case in light of the arguments raised.

As to MacQuesten's second ground, the Court finds that plaintiff conflates the issues of grounds to terminate with the responsibility to pay for work performed. MacQuesten may be able to prove that it had grounds to terminate the contract due to HCE's failure to pay its vendors and laborers; nevertheless, termination would not preclude HCE from recovering amounts owed to it for work performed prior to termination. Again, those factual issues are not ripe for summary judgment.

With respect to MacQuesten's third argument, the Court agrees with plaintiff that shortcomings in HCE's expert reports cast some doubt on the their final conclusions. At the same time, the Court agrees with HCE that these shortcomings primarily impact the weight of the experts' opinions and analyses. The parties have raised cross-motions for summary judgment, not motions in limine, and the record is viewed in the light most favorable to the non-moving party. If the expert reports are as faulty as MacQuesten contends, it will have ample opportunity to challenge them or to expose those shortcomings in later proceedings. At this stage, however, it is difficult to see how a difference of opinion as to the weight of an export report supports dismissing HCE's counterclaims for breach of contract.

As to MacQuesten's fourth ground on the issue of delay damages, the Court finds that Article 5.3.1 of the sub-contract agreements is sufficiently limited in scope to raise an issue as to its applicability here. Specifically, the Court notes that Article 5.3.1 specifically addresses sequencing delays and delays at the hands of the General Contractor, that is, MacQuesten. HCE's position that the discovery of unanticipated rock layers would not trigger the waiver in Article 5.3.1 is plausible at least at this stage of the litigation.

For these reasons, MacQuesten's motion for summary judgment on the breach of

contract and lien enforcement claims is denied.

Finally, MacQuesten has moved for summary judgment on HCE's fifth, sixth and seventh counterclaims for conversion and interference with HCE's economic and business relations. MacQuesten contends that HCE has failed to identify any equipment converted or any specific statements that would constitute interference with HCE's economic or business relations. To the contrary, the Declaration of John J. Hildreth clearly sets forth the items purportedly converted and the allegedly false statements made by MacQuesten, identifying the companies and individuals involved. (Hildreth Dec., ¶¶ 32–34.) Therefore, material issues of fact on the conversion and interference claims are not ripe for disposition on MacQuesten's summary judgment motion.

For all of the foregoing reasons, the Court grants HCE's motion for partial summary judgment on MacQuesten's second claim for fraud. Furthermore, the Court grants MacQuesten's motion for summary judgment on the breach of contract claims, only with respect to the Foglianos. In all other respects, MacQuesten's motion for partial summary judgment is denied.

### ORDER

For the reasons set forth in the "Statement of the Court," attached and incorporated herein, issued on the record at the March 22, 2002 status conference in this matter, it is hereby

**ORDERED** that defendant HCE Inc.'s motion for partial summary judgment [Doc. No. 42] as to plaintiff's second claim is GRANTED; and it is further

**ORDERED** that plaintiff's motion for partial summary judgment [Doc. No. 50] on the breach of contract claims against Rella and Sabino Fogliano is GRANTED, and the second and third claims shall be dismissed as against Rella and Sabino Fogliano; and it is finally

**ORDERED** that plaintiff's motion for partial summary judgment on defendant's counterclaims of breach of contract, lien enforcement, conversion and interference with economic and business relations is DENIED.

**SO ORDERED.**